FRED WEBER, INC., Appellee,

v.

SHELL OIL COMPANY, Shell Pipe Line Corporation, Amoco Oil Company and Standard Oil Company (Indiana), Appellants.

Nos. 77–1571, 77–1599 and 77–1616.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1977.

Decided Nov. 30, 1977.

Rehearing and Rehearing En Banc Denied Dec. 28, 1977.

William Simon of Howrey & Simon, Washington, D. C. (argued), for appellant, Shell Oil Co.; Alan M. Wiseman, Robert J. Brookhiser, Jr., Washington, D. C., and William G. Guerri, St. Louis, Mo., on brief for Shell Oil Co. and Shell Pipeline Corp.

John C. Shepherd, of Coburn, Croft, Shepherd, Herzog & Putzell, St. Louis, Mo. (argued), for appellant, Standard Oil Co. (Indiana); Richmond C. Coburn, Joseph A. Kral, III, Adrian L. Steel, Jr., St. Louis, Mo., and Maurice R. Glover, Chicago, Ill., on brief for Standard Oil Co. (Indiana) and Amoco Oil Co. (Indiana).

Norman C. Parker of Flynn & Parker, St Louis, Mo. (argued), for appellee; Mary Ann Weems of Flynn & Parker, Edward D. Weakley, and William I. Rutherford, St. Louis, Mo., on brief.

Before STEPHENSON and VAN OOSTERHOUT, Circuit Judges, and MARKEY,[*] Chief Judge.

MARKEY, Chief Judge.

Appeal from an order of the United States District Court for the Eastern Dis-

---

[*] The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

trict of Missouri, 432 F.Supp. 694 (E.D.Mo. 1977), denying defendants' motion to disqualify plaintiff's counsel. We affirm.

## Background

Among the defendants in the present civil antitrust suit are Shell Oil Company (Shell) and American Oil Company (Amoco), which seek the disqualification of Lashly, Caruthers, Thies, Rava & Hamel (the Lashly firm) as counsel for plaintiff Fred Weber, Inc. (Weber).

The Lashly firm was counsel for some of Shell and Amoco's codefendants in a prior criminal antitrust suit, *United States v. American Oil Co.*, 65 C.R. 150(3), brought in 1965. Shell and Amoco are represented here by the attorneys who represented them in the prior suit. That suit terminated in November 1965 when Judge Regan accepted pleas of nolo contendere from all defendants.

Judge Regan, the judge in *American Oil*, recused himself from the present suit on his own motion, in accord with the ABA Code of Judicial Conduct, Canon 3C(1)[1] and 28 U.S.C. § 455.[2] Order of December 10, 1976. One month later, and eight months after being sued for conspiracy to violate the antitrust laws in the present suit, Shell and Amoco filed their motion to disqualify the Lashly firm in view of Canons 4, 5, and 9 of the ABA Code of Professional Responsibility.[3]

Shell and Amoco allege that members of the Lashly firm, by reason of their representation in *American Oil*, had access to confidential information (debriefing memoranda of grand jury testimony) in the files of Amoco's counsel, and were present at meetings of counsel for all defendants at which defense strategy was discussed. The Lashly firm contends that it never represented Shell or Amoco in the criminal suit; that it never received confidential information; that, absent proof of receipt of confidential information, disqualification is not warranted; that there is no appearance of impropriety; and that the motion is one of a series of delaying tactics.

Judge Nangle, to whom the case was reassigned, ordered Shell and Amoco to file *in camera* "any and all material in their possession which support[s] the allegations made in their motion to disqualify plaintiff's attorney . . . [and] written affidavits setting out all confidences which were exchanged during the pendency of *United States v. American Oil Company* . . . ." Order of April 20, 1977.

After a hearing, Judge Nangle held that the evidence, including the *in camera* submissions, testimony, affidavits of counsel, and other submissions, established that counsel for the criminal defendants did agree to work together in their defense of the indictment, but that no member of the Lashly firm had represented Shell or Amoco or had received any confidential information. 432 F.Supp. at 696. The motion to disqualify was therefore denied.

## Scope of Review

■ We apply the scope of review in disqualification cases described in *Hull v. Celanese Corp.*, 513 F.2d 568 (2d Cir. 1975): "The district court bears the responsibility for the supervision of the members of its bar. [Citing authorities.] The dispatch of this duty is discretionary in nature and the finding of the district court will be upset only upon a showing that an abuse of discretion has taken place. [Citing authorities.]" 513 F.2d at 571.

## Issues

The dispositive issues on appeal are: (1) whether the order denying the motion is

---

1. Canon 3C(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned . . . .

2. 28 U.S.C. § 455(a) Any justice, judge, magistrate, or referee in bankruptcy of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

3. Canon 4. A lawyer should preserve the confidences and secrets of a client.

Canon 5. A lawyer should exercise independent professional judgment on behalf of a client.

Canon 9. A lawyer should avoid even the appearance of professional impropriety.

separately appealable, and (2) whether the district court abused its discretion in refusing the disqualification of the Lashly firm in view of Canon 4, 5, or 9 of the Code of Professional Responsibility.[4]

## OPINION

The question before us is one of first recorded impression: Does a lawyer's representation of A, codefendant with B in a prior suit, disqualify the lawyer as representative of C against B in a subsequent, related suit?

(1) *The order denying the motion to disqualify is immediately appealable.*

 Appeals in federal cases being governed by 28 U.S.C. § 1291 (1958) and 28

**4.** Judge Nangle found it "beyond dispute" that the prior criminal suit and the present civil litigation are substantially related, and denied appellants' request to revise that finding to merely state that appellee "claimed" such relationship. What appellee claims is irrelevant. That the matters be related is a necessary element of appellants' position on the motion to disqualify, as stated in opinions quoted in appellants' brief. Appellants have not requested that this court hold the finding clearly erroneous (nor could they), but only that we refrain from adjudicating the issue. There is no such "issue" before us. Either the matters are related or they are not. If they are not, the motion is and was groundless. It would be an abuse of the judicial process if counsel were to get his adversary disqualified because of representation in a related matter, and then deny that the matter was in fact related.

**5.** § 1291. Final decisions of district courts
 The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court.
 § 1292. Interlocutory decisions.
 (a) The courts of appeals shall have jurisdiction of appeals from:
 (1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except

U.S.C. § 1292 (1958),[5] appeals prior to final judgment below are commonly sought through the "collateral order" exception to the § 1291 "finality" requirement, created by the Supreme Court in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).[6] An order is appealable under *Cohen* when: (1) it is a "final determination of a claim of right 'separable from, and collateral to,' the rights asserted in the main action;" (2) it presents "'a serious and unsettled question,' rendering it 'too important to be denied review'"; and (3) an immediate appeal is "necessary to preserve rights that would otherwise be lost on review from final judgment." *Community Broadcasting of Boston, Inc. v. Federal Communications Commission*, 178 U.S.App.D.C. 256, at 259, 546 F.2d 1022 at 1025 (1976).

where a direct review may be had in the Supreme Court;

\* \* \* \* \* \*

(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

**6.** Section 1292(a)(1) provides for appeals from interlocutory orders refusing injunctions. Although often phrased as injunctions against further participation in a suit, the disqualification of counsel is not considered an injunction in determining appealability. *Fleischer v. Phillips*, 264 F.2d 515, 516 (2nd Cir. 1959), *cert. denied* 359 U.S. 1002, 79 S.Ct. 1139, 3 L.Ed.2d 1030 (1959) (overruled on other grounds), *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 496 F.2d 800 (2nd Cir. 1974) (*Silver Chrysler I*); *Cord v. Smith*, 338 F.2d 516, 521 (9th Cir. 1964) clarified 370 F.2d 418 (9th Cir. 1966). Appeal under § 1292(b), discretionary with the district and appellate courts, is uncertain in result and not generally used. See *Silver Chrysler I, supra*.

■ Courts have distinguished between the granting and denying of motions to disqualify counsel. Orders granting such motions have long been considered immediately appealable under *Cohen*. *Schloetter v. Railoc of Indiana, Inc.*, 546 F.2d 706 (7th Cir. 1976). The circuits disagree on appealability of orders denying motions. The Second, Third, Fifth, Sixth, Seventh and Tenth Circuits have held that orders denying motions to disqualify meet the requirements of *Cohen*. *Silver Chrysler I, supra* note 6 (overruling prior contrary decisions); *Greene v. Singer Co.*, 509 F.2d 750 (3rd Cir. 1971); *Tomlinson v. Florida Iron & Metal, Inc.*, 291 F.2d 333 (5th Cir. 1961); *Melamed v. ITT Continental Baking Co.*, 534 F.2d 82 (6th Cir. 1976); *Schloetter, supra; Fullmer v. Harper*, 517 F.2d 20 (10th Cir. 1975). The D.C. Circuit has held the contrary. *Community Broadcasting, supra*. The Ninth Circuit, with no mention of *Cohen*, has held denial of the motion reviewable by writ of mandamus, but not appealable. *Cord, supra*.

The disagreement is over the adequacy of review after final judgment, *Community Broadcasting, supra*, and *Silver Chrysler I, supra* note 6, are representative. In *Community Broadcasting*, the court said: "Although 'collateral' to the main proceeding, an order denying a motion to disqualify does not, in most cases, implicate any claim of right that will be irreparably lost on appeal from final judgment." 178 U.S.App. D.C. at 262, 546 F.2d at 1028. The D.C. Circuit also expressed the view that "[a] rule allowing interlocutory appeals here would provide litigants with yet another device by which to delay final determination on the merits, and would lead the court to divert its attention from the central issues in the case." 178 U.S.App.D.C. at 261, 546 F.2d at 1027 (footnote omitted). The court in *Silver Chrysler I* adopted the language and decision of the Supreme Court in *Cohen*: " 'We hold this order appealable because it is a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it.' 337 U.S. at 547, 69 S.Ct. 1221." 496 F.2d at 805–06. The Second

Circuit was influenced by its feeling that "[t]here is no sufficient basis for distinguishing between . . . [orders granting and denying disqualification]. In both situations the order is collateral to the main proceeding yet has grave consequences to the losing party, and it is fatuous to suppose that review of the final judgment will provide adequate relief." 496 F.2d at 805.

■ We hold that the order denying disqualification is final under *Cohen* and therefore appealable. The question involved is separable from and collateral to the main action; it is serious, and too important to await review in conjunction with the appeal from a final judgment. We recognize the obvious risk that an immediate appeal may be used for delay and diversion. On balance, however, we consider the risk insufficient to warrant an insistence that trials be conducted under a cloud of potential disqualification. Moreover, disciplinary powers of courts are available to deal with unfounded motions to disqualify and frivolous appeals from their denial.

(2) *Disqualification is not required by Canons 4, 5 or 9.*

### Canon 4

■ Though Canon 4 is an exemplary rule dealing with a particular relationship, the lawyer's personal relationships to others are incapable of comprehensive codification. The broad commitment of the lawyer to respect confidences reposed in him is his talisman. Touching the very soul of lawyering, it rests upon a "privilege" which is that of the client, not that of the lawyer. Inaccurately-described as the "lawyer's privilege against testifying," the privilege of clients to bind their lawyers to secrecy is universally honored and enforced as productive of social values more important than the search for truth. Canon 4 is designed to preserve the trust of the client in his lawyer, without which the practice of law, whatever else it might become, would cease to be a profession.

■ Because Canon 4 is limited by its language to the duty of the lawyer to his

client, *International Electronics Corp. v. Flanzer,* 527 F.2d 1288 (2d Cir. 1975), one who seeks to employ Canon 4 to disqualify opposing counsel must show that counsel to have, or to have had, an attorney-client relationship with an adverse party in the present suit.[7]

■ The movants in *In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83 (5th Cir. 1976), established an attorney-client relationship by proving they had engaged the attorney whose disqualification was sought. The court in *Continental Oil Co. v. United States,* 330 F.2d 347 (9th Cir. 1964), found an attorney-client relationship in the advice and representation provided certain parties. It is not here contended or shown that members of the Lashly firm were engaged by, or advised or represented, Shell or Amoco in the prior antitrust suit. The evidence supports the finding of the district court that neither Shell nor Amoco was ever a client of the Lashly firm. Canon 4 is therefore inapplicable.

■ In reliance on Canon 4, Shell and Amoco argue unnecessarily that the Lashly firm had "access" to confidential information. The attorney-client relationship raises an irrefutable presumption that confidences were disclosed. *In re Yarn Processing,* 530 F.2d at 89. Further, the presumed access of a partner to confidential information results in imputation of that information to others in his firm. *Laskey Bros. of W. Va., Inc. v. Warner Bros. Pictures, Inc.,* 224 F.2d 824 at 827 (2nd Cir. 1955). The presumption is an absolute necessity if the goal sought by Canon 4 is to be achieved. Indeed, a failure to apply the presumption in attempted disqualification cases would impinge upon, if not destroy, the underlying client's privilege against disclosure of the information imparted in confidence to his lawyer:

[T]he court need not, indeed cannot, inquire whether the lawyer did, *in fact,* receive confidential information during his previous employment which might be used to the client's disadvantage. Such an inquiry would prove destructive of the weighty policy considerations that serve as the pillars of Canon 4 of the Code, for the client's ultimate and compelled response to an attorney's claim of non-access would necessarily be to describe in detail the confidential information previously disclosed and now sought to be preserved. [*Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562 at 571 (2 Cir. 1973).]

Absent an attorney-client relationship, no court has applied the presumption inherent in Canon 4. Shell and Amoco's reliance on *NCK Organization Ltd. v. Bregman,* 542 F.2d 128 (2nd Cir. 1976) and *Hull, supra,* for the proposition that an attorney-client relationship is not required for application of Canon 4, is unavailing. In those cases, in-house counsel for the corporate defendants switched sides; in the former by becoming co-counsel of plaintiff's attorney; in the latter by becoming a plaintiff in the suit and retaining the original plaintiff's attorneys. In-house counsel in both cases were presumed to have received information from their former corporate clients, and that information was imputed to the attorneys with whom in-house counsel became associated.

*Canon 5*

■ Canon 5 deals with professional zeal. The term "client" in Canon 5 identifies the beneficiary of that zeal. The Canon is broad enough to preclude simultaneous representation of conflicting interests (Ethical Consideration 5–14 of Canon 5) and the use of information against someone who, reposing confidence in the lawyer, supplied that information to the lawyer's client,[8] and to encompass similar ethical

---

**7.** The movant must also show (as here) that "the matters involved in the pending suit in which his former attorney represents his adversary are substantially related to the matters or cause of action in which the attorney previously represented him . . . ." *American Can Co. v. Citrus Feed Co.,* 436 F.2d 1125, 1128 (5th Cir. 1971) (speaking of former Canons 6 and 37, the predecessors of Canon 4).

**8.** H. Drinker, Legal Ethics 106 (1965).

considerations involved in the lawyer's exercise of his professional judgment.

■ The evidence here reflects no failure of compliance with Canon 5, or potential for such failure, on the part of the Lashly firm. Nothing of record indicates an impediment to the exercise of independent professional judgment by the Lashly firm on behalf of its present client, Weber; nothing indicates the presence of conflicting interests; nothing indicates that Shell or Amoco, or anyone else, supplied information to Weber, whether in confidential reliance on the Lashly firm or otherwise.

### Canon 9

■ Unlike those of Canons 4 and 5, the broad injunction of Canon 9 against the "appearance of impropriety" relates to the entire spectrum of lawyer conduct. That no unethical or untoward act may have occurred is implicit in the canon's emphasis on "appearance." The conduct under scrutiny must therefore be evaluated in an "eye of the beholder" context, and the lawyer must be disqualified when an actual appearance of evil exists, though there be no proof of actual evil.

■ Would a member of the public, or of the bar, see an "impropriety" in the mere representation of C against B by a lawyer who had represented B's codefendant in a related prior suit? We think not. The public and the bar are aware that particular lawyers have specialized in certain areas of the law and that their number is limited within specific geographical limits. It would be neither surprising nor unexpected that the same lawyer would appear for plaintiffs and defendants, and that a present adverse party may have been on the other side in a prior case. To hold that every representation against a former client's codefendant in a related matter raises an appearance of impropriety would unnecessarily restrict the choice of counsel available to litigants.

■ Nor will we presume the lack of integrity involved in a knowing acceptance of representation against a party from whom, or about whom, confidential information had been obtained. If a presumption of integrity, which should be the proud and earned possession of every lawyer, has been destroyed by recent renowned conduct of some members of the bar, it is neither yet necessary, nor socially advantageous, to substitute a presumption of non-integrity.

As was said in *Woods v. Covington County Bank,* 537 F.2d 804 (5th Cir. 1976):

It does not follow, however, that an attorney's conduct must be governed by standards which can be imputed only to the most cynical members of the public. Inasmuch as attorneys now commonly use disqualification motions for purely strategic purposes, such an extreme approach would often unfairly deny a litigant the counsel of his choosing. Indeed, the more frequently a litigant is delayed or otherwise disadvantaged by the unnecessary disqualification of his lawyer under the appearance of impropriety doctrine, the greater the likelihood of public suspicion of both the bar and the judiciary. . . Consequently, while Canon 9 does imply that there need be no proof of actual wrongdoing, we conclude that there must be at least a reasonable possibility that some specifically identifiable impropriety did in fact occur. [537 F.2d at 813 (footnotes omitted).]

■ Of itself, representation of a codefendant of B raises no presumption that the lawyer obtained confidential information detrimental to B's interests. Nor may confidential information which B may have imparted to its counsel be imputed to the lawyer. The relationship between individual counsel for separate codefendants differs in structure and function from the relationship between partners in a law firm and from the relationship between co-counsel for a single party. Applicability of Canon 9 thus turns on a fact question: Did the Lashly firm obtain confidential information in the course of representing a codefendant of Shell and Amoco in the prior suit?

■ The prior criminal action never went to trial. The joint application of all codefendants for change of plea to nolo

contendere was filed one month after arraignment, with no intervening motions. The record here reflects no preparation of a substantive defense. Discussions among counsel, in which members of the Lashly firm participated, concerned only procedural matters. The memorandum in support of the change of plea was based on legal, not factual matters. Our study of the record, including the *in camera* submissions, persuades us that the Lashly firm obtained no confidential information in the course of representing the former codefendant of Shell and Amoco. The prompt disposal of the earlier suit on a purely procedural basis and the limited discussions among counsel for the defendants convinces us that no basis exists for presuming that confidential information was obtained which presumption would in turn serve as the genesis of an appearance of impropriety.[9] Absent such presumption, the burden of showing an actual imparting of confidential information was upon Shell and Amoco, which have not met that burden on this record.[10]

In the circumstances of this case, refusal to disqualify the Lashly firm is not seen as giving scandal to the profession; or as risking injury to its integrity and honor; or as discouraging public respect for the law or the courts; or as disabling the confidence, respect and trust which underpin the profession; or as limiting the public thrust of Canon 9 or its guardianship over the reputation of the lawyer and his profession.

### Conclusion

The district court's findings of fact were not clearly erroneous, and its refusal to disqualify the Lashly firm was not an abuse of discretion. Accordingly, the order of the district court is affirmed.

Affirmed.

---

**9.** We need not decide whether an appearance of impropriety might be created by prior representation of a codefendant, where a full, substantive defense was jointly prepared and presented in a completed trial, or whether such representation might shift the burden of proof to the challenged lawyer.

**10.** Shell and Amoco point to the self-disqualification of Judge Regan, but that disqualification turned on the appearance of partiality, not impropriety. The Lashly firm, as an advocate, is not expected to be impartial.