Margaret M. KREBS, Executrix of the Estate of Michael H. Krebs, and Margaret M. Krebs, in her own right

v.

JOHNS–MANVILLE CORPORATION et al.

Civ. A. No. 78–2299.

United States District Court, E. D. Pennsylvania.

June 4, 1980.

John P. Mason, Philadelphia, Pa., for Turner & Newall Ltd.

Joseph H. Foster, Philadelphia, Pa., for 48 Insulation.

O'Halloran and Schofield, E. J. O'Halloran, Philadelphia, Pa., for defendant Crown Cork and Seal Co., Inc.

Blank, Rome, Klaus & Comisky, Norman Perlberger, Philadelphia, Pa., for plaintiff.

Thomas C. DeLorenzo, Francis E. Marshall, Philadelphia, Pa., for Johns-Manville Corp. and Johns-Manville Sales Corp.

Deiweiler, Hughes & Kokonos, Dudley Hughes, Philadelphia, Pa., for Unarco Industries, Inc.

Malcolm & Riley, Thomas O. Malcolm, West Chester, Pa., for Celetex Corp. and Philip Carey.

Barbara Pernell, Joseph R. Thompson, Philadelphia, Pa., for Eagle-Picher Industries, Inc.

Albert L. Bricklin, Philadelphia, Pa., for Nicolet Industries, Inc.

Robert M. Britton, Jonathan Wheeler, Philadelphia, Pa., for Delaware Insulation Co.

John Patrick Kelley, Philadelphia, Pa., for Owens-Corning Fiberglass Corp.

John F. Naulty, Philadelphia, Pa., for Raybestos-Manhattan, Inc.

Lowell A. Reed, Jr., Philadelphia, Pa., for Pacor, Inc.

Peter A. Dunn, Philadelphia, Pa., for Brand Insulations, Inc. & Amate.

John J. Connors, Jr., Southampton, Pa., for Pittsburgh Corning Corp.

Ralf Gilbert, Morrisville, Pa., for A. C. & S.

Daniel J. Ryan, Philadelphia, Pa., for defendant, Keene Corp.

Joseph C. DeMaria, Philadelphia, Pa., for Certain-Teed Corp.

Thomas J. Ingersoll, Philadelphia, Pa., for defendant, Armstrong Cork Co.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Certain defendants in this vigorously litigated asbestos case have moved to disqualify plaintiff's counsel. The majority of facts relevant to this motion are uncontested. *See* Stipulation of Facts, attached hereto as Appendix "A". Those facts may be summarized as follows: John D. O'Keefe was associated with Blank, Rome, Comisky & McCauley for several years prior to April 2, 1979, when he opened his present office. While at Blank, Rome, he obtained Monsey Products Company (Monsey), a manufacturer of building products, as a client. Mr. O'Keefe's work at Blank, Rome was in the Commercial Department. He directed to the appropriate department at Blank, Rome any matter that arose in his representation of Monsey, which included matters of real estate, taxation, labor, and litigation. The litigation work, however, did not involve any personal injury claims or asbestos litigation. During his representation of Monsey at Blank, Rome, Mr. O'Keefe was named an associate member of the Legal-Medical Affairs Committee (the Committee) of the Asbestos Information Association (AIA). Monsey was a member of AIA. Although he attended no meetings of the Committee or of AIA, Mr. O'Keefe did receive various memoranda prepared for AIA by its special counsel. One such memorandum, dated October 12, 1978, is referred to as the "State of the Medical Art Memorandum."

While Mr. O'Keefe was still at Blank, Rome, the firm began its representation of Michael Krebs.[1] That representation began

---

1. During the pendency of this action, Mr. Krebs has died. The action is now being prosecuted on behalf of his wife, as executrix of Mr. Kreb's estate and in her own right.

around April 3, 1978, and originally involved a workmen's compensation matter which has since been expanded to encompass this action. For approximately one year, therefore, Mr. Krebs and Monsey were both clients of Blank, Rome. When Mr. O'Keefe left Blank, Rome, he took his client Monsey and, to the best of his knowledge, all relevant documents with him. Blank, Rome no longer represents Monsey in any way.

Monsey has at no time been a party to this action. In fact, based upon the record in this action, it appears that Monsey has never been a defendant in any asbestos litigation. Stipulation of Facts ¶ 5. Certain defendants in this action, however, are also members of AIA and the Legal-Medical Affairs Committee. Purporting to "stand in the same shoes as Monsey Products Company," they have moved to disqualify plaintiff's counsel for alleged violations of Canons 4, 5 and 9 of the Code of Professional Responsibility. In connection with this motion, one of the moving defendants has submitted for *in camera* inspection the various memoranda Mr. O'Keefe received from AIA while he was at Blank, Rome. Movants contend that these memoranda were confidential and privileged and involved claims identical to plaintiff's claim in this action.

It has been noted that

the disqualification process rests on three major ethical concepts. First, an attorney shall not reveal the confidences of his client. This principle assures the client that whatever he says to his attorney will remain confidential and thus facilitates communication between client and attorney. Second, an attorney must exercise independent judgment on behalf of his client. The attorney's allegiance to the client's cause, undivided by his personal interests or another client's interests, helps to ensure the client of adequate representation. Finally, the Code's most stringent ethical principle pertaining to disqualification states that an attorney shall avoid even the appearance of impropriety.

Note, "Motions to Disqualify Counsel Representing an Interest Adverse to a Former Client," 57 *Texas Law Review* 726, 728 (1979) (footnotes omitted). Although these concepts are easily stated, their application requires a close analysis of the facts of each case. Motions to disqualify must be approached with great care since they implicate numerous important interests, including the public's interest in the conduct of the bar, confidence in our legal system, confidences of past or current clients, and a party's interest in maintaining the representation of its choice. When faced with motions of this nature, courts must not be reluctant to order withdrawal where required or to deny the motion if disqualification is not warranted.

■ The facts of this case are somewhat unique. Unlike the typical disqualification case, the former client or current client whose interests are supposedly being infringed is neither a party in this action nor moving for disqualification. Rather, the facts of this case are considerably more attenuated. I have decided that under the facts of this case, disqualification is not required.

First of all, I note that Monsey is no longer a client of Blank, Rome. There is no real danger, therefore, that Blank, Rome's zeal in its representation of its current client will be diminished in any manner. There has certainly been no intimation that plaintiff is in any way dissatisfied with her present counsel. I do not believe that Canon 5 requires disqualification on the facts of this case.

In regard to Canon 4 and the concerns of preserving confidences of a client, the Third Circuit "has adopted the position that an attorney should be disqualified if he may have acquired material that is substantially related to his disputed representation in the course of a prior employment." *Akerly v. Red Barn System, Inc.*, 551 F.2d 539, 544 n.12 (3d Cir. 1977). I again find the facts of this case so attenuated as not to require disqualification. First of all, I reiterate

that the former client, Monsey, is not a party in this case.[2] Secondly, Blank, Rome did not represent Monsey in any asbestos litigation. In fact, it appears Monsey has never been involved in any such litigation. The adversity between Monsey and Blank, Rome's current client is therefore far from clear. Monsey will clearly not be liable for any judgment plaintiff receives in this case. It may be that in a certain sense Monsey is "interested" in seeing defendant verdicts in cases of this nature. Defendants suggest, for example, that Monsey's insurance rates may be affected by the possibility that it could be a defendant in a suit of this nature. They also suggest that Monsey must pay attorney's fees to monitor asbestos litigation. Assuming these suggestions are correct, they lack what we consider to be concrete indicia of adversity. Although they might assume greater significance if Monsey were still a client of Blank, Rome, on the facts of this case I find them to be unpersuasive. I am therefore faced with a situation in which the former client is not a party, has not been shown to have concrete adversity to plaintiff, and has not been represented in similar litigation by plaintiff's counsel at any time.

■ However, it is true that Blank, Rome, through Mr. O'Keefe, represented Monsey on the Legal-Medical Affairs Committee which was concerned with asbestos litigation in general. I note initially that AIA, like Monsey, is not a party to this action. Moreover, Mr. O'Keefe was not counsel to AIA, but was Monsey's representative on the Committee. There is no basis, therefore, for contending that Blank, Rome, through Mr. O'Keefe, represented other members of AIA who are parties to this action. More importantly, however, a review of the memoranda Mr. O'Keefe obtained by virtue of his membership on the Committee reveals that no confidences of Monsey, or, for that matter, of any other members of the Committee, concerning this case or any other case, were transmitted.[3] The memoranda, although well researched and thoughtfully prepared, contain, for the most part, a hornbook discussion of several areas of law relating to asbestos cases. The most significant document, referred to by the parties as the State of the Medical Art Memorandum, contains material that would no doubt be of interest to plaintiff's counsel. However, for the most part the document consists of a discussion of reported cases and other matters of public record. Although the preparation of the documents undoubtedly required painstaking research and effort, and although it may well be that plaintiff's counsel is not entitled to obtain this document through discovery from the current defendants, the document is devoid of any confidential information passed from any member of AIA to its special counsel or of any specific factual information about this case. Although the memorandum discusses certain defenses that defendants to asbestos cases may raise, this discussion makes no startling revelations that are not general knowledge among attorneys who litigate in this area. Coupled with the other attenuated circumstances which we discussed before, the absence of confidential information in the documents purportedly showing the confidences Mr. O'Keefe received is a further attenuation leading us to the conclusion that disqualification is not required.[4]

---

2. At least one court has suggested that "one who seeks to employ Canon 4 to disqualify opposing counsel must show that counsel to have, or to have had, an attorney-client relationship with an adverse party *in the present suit*." *Fred Weber, Inc. v. Shell Oil Co.*, 566 F.2d 602 (8th Cir. 1977), *cert. denied*, 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403 (1978) (emphasis supplied).

3. Normally, a former client moving for disqualification need not show that confidences were in fact disclosed. *T.C. Theatre Corp. v. Warner*

Bros. Pictures, Inc., 113 F.Supp. 265 (S.D.N.Y. 1953). We believe that an examination of the relevant documents was proper in this case, however, because of the unusual facts of this case. If Monsey were a party-defendant in this action, this examination may have been unnecessary.

4. Aside from the absence of confidences relating to this case and the fact that Monsey is not a party to this case, we note that Mr. O'Keefe denies sharing the information in the AIA memoranda with anyone at Blank, Rome.

I must finally consider whether Blank, Rome's continued representation creates an appearance of impropriety.[5] In a certain sense, it may have been preferable if this particular factual situation had not arisen. However, as the previous discussion discloses, I find that Blank, Rome has not violated either Canon 4 or 5 by its actions in this case. To be sure, an appearance of impropriety exists in the defendants' eyes. However, before I order disqualification for an appearance of impropriety, I believe that the appearance of impropriety must be one that can reasonably be drawn. I do not find that to be the case in this action. In view of the extreme attenuation of the facts in this case, I do not believe that Blank, Rome's actions would cause a reasonable person to question the integrity of our legal system. On the contrary, I believe that more damage would arise if the perception were created that a party to litigation could be denied the counsel of his or her choice due to counsel's prior representation of a client which is not a party to the action at issue, which has not been demonstrated to have an adverse interest to the present client, and which had not imparted to its prior counsel any confidences pertaining to the subject matter of the present action. In such a situation, in which no violation of Canon 4 or 5 appears, I believe there is not a sufficient appearance of impropriety to warrant disqualification.

O'Keefe affidavit ¶¶ 11, 16. Moreover, he denies knowledge that Blank, Rome was involved in an asbestos case while he was an associate there. *Id.* ¶ 12. Furthermore, plaintiff's counsel have denied, in a document signed by counsel, ever receiving any information in AIA documents. Answer to Johns-Manville's Motion to Disqualify Norman Perlberger, Esquire, and Blank, Rome, Comisky & McCauley as Counsel for Plaintiff. Normally protestations of this sort do not prevent disqualification. However, in a case that is as factually attenuated from the typical disqualification case as this case is, we believe that these statements of members of the bar are entitled to some consideration. This is not a case of current dual representation in which plaintiff's counsel is attempting to create a "Chinese wall" to protect confidences. I therefore believe that these statements provide support for my decision to deny the motion to disqualify.

## ORDER

NOW, June 4, 1980, upon consideration of the motion to disqualify plaintiff's counsel, the memoranda submitted by the parties, the stipulation of facts, the affidavits filed of record, and after *in camera* inspection of relevant documents, IT IS ORDERED that the motion is DENIED.

Appendix "A"

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARGARET M. KREBS, EXEC. OF THE ESTATE OF MICHAEL H. KREBS AND MARGARET M. KREBS IN HER OWN RIGHT | * CIVIL ACTION |
| VS. | |
| JOHNS–MANVILLE CORPORATION ET AL | NO. 78–2299 |

## STIPULATION OF FACTS

AND NOW, this 6th day of September, 1979 it is STIPULATED and AGREED by and between Norman Perlberger, attorney for the plaintiffs, and Francis E. Marshall, attorney for Johns-Manville that:

1. John D. O'Keefe is an attorney-at-law presently maintaining offices at Suite 1313 Robinson Building, 15th and Chestnut Streets, Philadelphia, PA 19102 and has been at that location since April 2, 1979.

5. Plaintiff has questioned defendants' standing to raise this motion. There is support for plaintiff's position. *See, e. g., In Re Yarn Processing Patent Validity Litigation,* 530 F.2d 83, 88–89 *rehearing denied,* 536 F.2d 1025 (5th Cir. 1976) (collecting cases). In view of the ultimate resolution that I reach, it is unnecessary to determine if plaintiff's position in this regard has merit. However, district courts are charged with supervising the conduct of the members of their bars. *Richardson v. Hamilton International Corp.,* 469 F.2d 1382 (3d Cir. 1972), *cert. denied,* 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973). I therefore believe it appropriate in a case in which an alleged impropriety is brought to my attention to satisfy myself that no violation has occurred, or, in a case in which a violation appears, to take appropriate action.

2. Prior thereto and *since 1970* Mr. O'Keefe had been an associate in the Commercial Department of the law firm of Blank, Rome, Klaus and Comisky (renamed Blank, Rome, Comisky and McCauley).

3. While with the firm of Blank, Rome, Comisky and McCauley, he obtained as a client Monsey Products Company, a manufacturer of building products.

4. While he was with the firm, he was the attorney in charge of the above client and directed to the appropriate department any matter which arose in connection with the company's general representation. These included matters of Real Estate, Tax, Estate, Labor and Litigation (not related to any personal injury claims or Asbestos Litigation).

5. To his knowledge, Monsey Products Company has never been involved in asbestos litigation or any Workmen's Compensation claims arising from alleged use, handling or exposure to asbestos or asbestos products.

6. During his entire association with the firm other than appearing for argument before the Administrative Tax Board for the City of Philadelphia, he never handled a single litigation matter and limited his practice to commercial, tax, real estate and corporate affairs.

7. On or about July 5, 1979, he received a letter from the Asbestos Information Association (hereinafter A.I.A.) naming him as an associate Member of A.I.A.'s Legal/Medical Affairs Committee (hereinafter "Committee"). Defendants' Exhibit "A" is a true and correct copy of the letter that he received.

8. Following his appointment, he received a State of the Medical Art Memorandum, other Memoranda, and various materials, including newspaper clippings from the Committee and its Special Counsel, Cadwalader, Wickersham and Taft.

9. The aforementioned Memoranda were prepared by Special Counsel for A.I.A., and its Legal Research Committee in what Special Counsel and the Committee considered to be confidential and privileged material in the context of an attorney-client relationship. It has been represented by Johns-Manville and for purposes of this Stipulation it is stipulated that the Memoranda so prepared and distributed were:

a. A Memorandum dated October 12, 1978, and commonly known as the "State of the Medical Art Memorandum";

b. A Memorandum dated April 20, 1977, entitled "Workmen's Compensation and Non-Employers";

c. A Memorandum dated February 3, 1977, entitled "Collateral Estoppel";

d. A Memorandum dated January 10, 1977, relating to Cigarette-Cancer Cases;

e. A Memorandum dated August 23, 1976 entitled "Statute of Limitations Defenses to Workmen's Compensation Claims and Third-Party Actions in Strict Products Liability resulting from Contracting of Latent Disease".

10. It is stipulated that the Exhibits and Affidavits before this Court in connection with the Motion to Disqualify indicate that these Memoranda were requested in connection with preparing the defense of certain legal actions that had been brought against A.I.A. and certain of its members.

11. In addition to A.I.A. and its members, Special Counsel has disseminated the subject memoranda to an asbestos manufacturer, not a member of A.I.A., but a client of the firm of Cadwalader, Wickersham and Taft which has retained that firm as Special Counsel in connection with on-going asbestos-related disease litigation; nevertheless, Special Counsel and the Committee consider said memoranda to continue to retain a confidential and privileged status.

12. At no time did Attorney O'Keefe ever attend a meeting of the Committee.

13. At no time did he ever attend a meeting of A.I.A.

14. To the best of his knowledge, no attorney or paralegal at the firm even knew that he had the subject materials and since he severed his relationship with the firm, he moved all materials described in said paragraph to his new offices.

15. Not until after Mr. O'Keefe severed his ties with the firm was he ever aware that anyone at the firm was involved in asbestos litigation.

16. When he left the firm in March, 1979 and opened his own offices to his personal knowledge and belief he brought with him all of the documents he received from A.I.A., the Committee and its Special Counsel, inasmuch as he continued to represent Monsey Products Company as general counsel. To his personal knowledge and belief no copies of any of the aforesaid mentioned materials were left with the firm upon his departure.

17. Mr. O'Keefe's first knowledge of the above captioned litigation came when he received a hand-delivered letter dated May 10, 1979, from Thomas C. DeLorenzo.

18. He responded to Mr. DeLorenzo's letter by letter of May 14, 1979, which is defendants Exhibit "B" and avers that the facts contained in it are true and correct.

19. To the present day, he had never shared with anyone at the firm either the documents themselves from A.I.A., the Committee or Special Counsel, or the substance of anything contained therein.

20. Mitchell S. Cohen, Esquire, has been an associate with the law firm of Blank, Rome, Klaus and Comisky (renamed Blank, Rome, Comisky and McCauley) since January 15, 1979. He along with Norman Perlberger, Esquire, are counsel for plaintiffs in this matter.

21. He has personally searched the files and records relating to plaintiffs' representation and avers that the firm was first consulted by the plaintiffs on April 3, 1978, to represent their interests in a Workmen's Compensation matter which was thereafter expanded to include the instant suit.

22. All Exhibits and Affidavits, including defense Exhibits "A through K" and plaintiffs' Exhibits "I" (portions of deposition of Guy Gabrielson), Plaintiffs' Exhibit "1" (Wendell B. Alcorn's letter to Marshall, Dennehey and Warner dated July 12, 1979, also included as Exhibit "K"), and plaintiffs' Exhibit "2" (two pages of A.B.A. formal Opinion 342), are true and accurate, with the exception that it is stipulated that paragraph 13 of John O'Keefe's Affidavit reflects only his knowledge and belief that the memoranda were not ever seen or copies retained by Blank, Rome, Comisky and McCauley and that it does not purport to represent evidence over which he may not have had knowledge.

BLANK, ROME, COMISKY AND McCAULEY

By: s) Norman Perlberger

NORMAN PERLBERGER, ESQUIRE

Attorney for Plaintiff

MARSHALL, DENNEHEY & WARNER

By: s) Francis E. Marshall

FRANCIS E. MARSHALL, ESQUIRE

Attorney for Johns-Manville