**HALLMARK CARDS, INCORPORATED,**
**Plaintiff,**

v.

**HALLMARK DODGE, INCORPORATED,**
**Defendant.**

No. 83–1377–CV–W–8.

United States District Court,
W.D. Missouri, W.D.

Aug. 16, 1985.

Barry M. Katz, M. Theresa Hupp, Kansas City, Mo., for plaintiff.

Gerald H. Rosen, Kansas City, Mo., for defendant.

## ORDER

STEVENS, District Judge.

Before the court is plaintiff Hallmark Cards, Incorporated's June 10, 1985 motion to disqualify the law firm of Rosen & Silverman as defense counsel for Hallmark Dodge, Incorporated on the grounds that that firm's continued participation in this action violates Canons 4, 5, and 9 of the Code of Professional Responsibility incorporated in Missouri Supreme Court Rule 4 and adopted by the Western District pursuant to Local Rule 2D. Specifically, plaintiff argues that Silverman's dual role as a Gage & Tucker partner and a Rosen & Silverman partner during a portion of the month of May violated Canon 5 in that he owed simultaneous and conflicting duties to Hallmark Cards, a Gage & Tucker client, and to Hallmark Dodge, Incorporated, a Rosen & Silverman client. Plaintiff next argues that, notwithstanding Silverman's denial of actual knowledge relating to the

Hallmark trademark file, Silverman must be conclusively presumed to possess the confidences and secrets disclosed by plaintiff to that firm. Since those confidences and secrets are undeniably related to issues now raised by Dodge in this litigation, plaintiff asserts that Rosen & Silverman must be disqualified under Canon 4. Finally, plaintiff argues that Silverman's admitted access to Gage & Tucker files, particularly during the period in which he actively participated in this action as a defense attorney, his admitted knowledge that Gage & Tucker represented Hallmark Cards in other matters, and the "intensified interest of Dodge" in those "other matters" after Silverman's arrival at the Rosen & Silverman firm create an obvious appearance of impropriety in violation of Canon 9. For reasons which follow, the court finds that defense counsel have violated Canons 4 and 9 of the Code of Professional Responsibility and, therefore, plaintiff's motion to disqualify will be granted.

### Facts

For fifteen years, Myron F. Silverman was employed by the law firm of Gage & Tucker. In 1970, when Gage & Tucker hired Silverman as an associate, the firm was a medium-sized firm with approximately twenty-seven attorneys. Silverman became a partner with the firm in 1975 and continued with them until May 31, 1985. By this time, the firm had nearly doubled its size.

It is undisputed that plaintiff Hallmark Cards was and continues to be a client of Gage & Tucker. During the fifteen years in which Silverman worked for and with Gage & Tucker, one of the actions in which Gage & Tucker represented Hallmark Cards was a California lawsuit entitled *Hallmark Cards, Inc. v. Hallmark of Hollywood, Inc., et al.* That suit, like this one, involved issues of trademark infringement or trademark protection. Thus, it is clear that Gage & Tucker rendered advice on these issues to Hallmark Cards.

While Silverman denies having any knowledge of any legal matters relating to

Hallmark Cards, Silverman admits that he was aware that Gage & Tucker represented Hallmark Cards. Further, affidavits submitted by plaintiff indicate that this "awareness" included knowledge that Gage & Tucker represented plaintiff in *Hallmark Cards, Inc. v. Hallmark of Hollywood, Inc., et al.*

It is also undisputed that Hallmark Cards has disclosed confidences and secrets to Gage & Tucker related to trademark issues and that Gage & Tucker retains a file entitled Hallmark Cards, Inc.—Trademark Protection Plan. Until May 31, 1985, Silverman admittedly had full access to this file but he denies having taken the opportunity actually to review it.

In addition, Silverman admits that he knows of a 1971 or 1972 research memorandum prepared for Hallmark Cards but unrelated to issues in this action. However, Silverman, in his affidavit, does not indicate whether this "knowledge" was gained from discussing the issues with others in the firm, from reading the memorandum, or from preparing it.

Although technically employed at Gage & Tucker until May 31, 1985, Silverman began his association with Gerald Rosen on or about May 7, 1985. It is undisputed that his association with Rosen & Silverman began prior to May 31, 1985 and pleadings filed on May 7, 1985, indicate that Rosen's firm had by that time officially changed its name to Rosen & Silverman. Immediately upon his association with Rosen, Silverman became actively involved in the action at bar.

On or about the time that Silverman became involved in this action, defendant, through depositions, interrogatories, and a proposed amended answer, sought information concerning other Hallmark trademark protection matters. Thus, although this action was filed nearly two years ago, it was not until Silverman's association with Rosen that defendant made extensive inquiries concerning other Hallmark actions and that defendant sought to amend its answer to add affirmative defenses based upon plaintiff Hallmark Cards, Incorporat-

ed's treatment of other entities using the Hallmark name.

### Discussion

It is well-established that "[t]he district court bears the responsibility for the supervision of the members of its bar." *Fred Weber, Inc. v. Shell Oil Co.*, 566 F.2d 602, 605 (8th Cir.1977), *cert. denied*, 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403 (1978), *citing Hull v. Celanese Corp.*, 513 F.2d 568 (2nd Cir.1975). In this district, that supervision is conducted in accordance with Missouri Supreme Court Rule 4, the Code of Professional Responsibility. *See* Local Rule 2 D.

■ Canon 5 of the Missouri Code of Professional Responsibility provides that "a lawyer should exercise independent professional judgment on behalf of a client." EC5–1 states in pertinent part, "The professional judgment of a lawyer should be exercised ... free of compromising influence and loyalties. Neither his personal interests, the interests of other clients, nor the desires of third persons should be permitted to dilute his loyalty to his client." Since Silverman denies any knowledge of the confidences and secrets disclosed by Hallmark Cards to Gage & Tucker and denies knowledge of the trademark matters in which Gage & Tucker represented Hallmark Cards, it is very possible that his independent professional judgment was not actually impaired in this action. However, his loyalty was undeniably divided during the period of time in which he continued employment with Gage & Tucker and began his employment with Rosen & Silverman. Thus, while this court does not find an actual violation of Canon 5 which would alone warrant disqualification, the overlapping period of representation does give rise to a violation of the ethical considerations within that Canon.

Canon 4 of the Missouri Code provides for the "preservation of confidences and secrets of a client." It is "designed to preserve the trust of the client and his lawyer, without which the practice of law, whatever else it might become, would cease to be a profession." *Fred Weber, Inc. v. Shell Oil Co.*, 566 F.2d at 607. Thus, Canon 4 gives to clients a privilege to bind their lawyers to secrecy. *Id.*

■ To give substance to this privilege, courts have long held that "[c]onfidential disclosures, actual or presumed, necessitate disqualification of [an] attorney when he represents an adverse interest in a related matter." *State of Arkansas v. Dean Foods Products Co., Inc.*, 605 F.2d 380, 384–85 (8th Cir.1979). Courts *presume* that confidential disclosures have been made and that disqualification is warranted when three elements are present:

> (1) the movant party was previously represented by the attorney whose disqualification he seeks; (2) the matters embraced within the pending suit are substantially related to the matters of the cause of action for which the attorney previously represented the movant party; and (3) the attorney is representing an adversary of the movant party in the pending suit.

*Black v. State of Missouri*, 492 F.Supp. 848, 863 (W.D.Mo.1980). In this action, it is undisputed that confidences and secrets substantially related to the matters at issue were disclosed to the firm of Gage & Tucker while attorney Silverman was employed there.[1]

■ Because "clients can expect that confidences disclosed to one attorney will be shared with others in the firm," *State of Arkansas v. Dean Foods Products Co., Inc.*, 605 F.2d at 385, confidences imparted to one attorney are presumed shared

---

**1.** In point of fact, this finding is unnecessary since the court accepts the law in the Eighth Circuit—that is, that the attorney-client relationship raises an irrefutable presumption that plaintiff Hallmark Cards disclosed confidences and secrets to Gage & Tucker. *Fred Weber, Inc. v. Shell Oil Co.*, 566 F.2d at 608. *See also State*

*of Arkansas v. Dean Foods Products Co., Inc.*, 605 F.2d at 384. *But see EZ Paintr Corp. v. Padco, Inc.*, 746 F.2d 1459, 1462 (Fed.Cir.1984), and *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corporation*, 518 F.2d 751, 754 (2nd Cir. 1975), for the proposition that this presumption is rebuttable.

**520**

among his partners and among other employees associated with him at the time. *State of Arkansas v. Dean Foods Products Co., Inc.,* 605 F.2d at 385; *Fred Weber, Inc. v. Shell Oil Co.,* 566 F.2d at 608.[2] "The public perceives, a client has the right to expect, and the goals of the Code require us to assume that the members and staff of a law firm working on a suit do so collectively rather than individually.... *State of Arkansas v. Dean Foods Products Co., Inc.,* 605 F.2d at 387. Further, the attorney's liability for disqualification is not cured by dissolution of or departure from the partnership. *Id.*

Disqualification of Silverman thus rests on the imputation to him of knowledge disclosed by Hallmark Cards to the Gage & Tucker firm partners. Relying on a Second Circuit case, *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corporation,* 518 F.2d 751 (2nd Cir.1975), defendant argues that the confidences disclosed by Hallmark to Gage & Tucker should not be imputed to attorney Silverman since that firm has grown to nearly sixty attorneys. The court disagrees.

First, as the Eighth Circuit has noted, regional differences, including the number of persons employed by a firm, rarely, if ever, should be the basis for disparate or differential application of the Code of Ethics. *State of Arkansas v. Dean Foods Products Co., Inc.,* 605 F.2d at 385, n. 4. Second, the court notes that even if a differential were applied, Gage & Tucker, at the time it became involved with Hallmark Cards trademark issues and at the time attorney Silverman became associated with it, was *not* a large firm. Finally, the court notes that the case relied upon by defendant is inapplicable since the presumption

that confidences were given to the firm did not arise. In that case, the matters embraced within the pending suit were not substantially related to the matters for which the firm previously represented the movant party. *See Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corporation,* 518 F.2d 751 (2nd Cir.1975). Thus, while the court bolstered its argument for denial of disqualification by labeling the presumption of confidences described above as "rebuttable," no presumption existed. The imputation of confidences to the attorney of this large eighty-man firm was therefore particularly irrational.

More analogous to the case at bar is *State of Arkansas v. Dean Foods Products Co., Inc.,* 605 F.2d 380 (8th Cir.1979). In *Dean Foods Products,* the court expressly found that the attorney had no actual knowledge of the file at issue and had never looked at the substantially related file. *Id.* at 387. His only connection with the client involved the ministerial acts of filing papers and conducting a title search. Nevertheless, the court found that the firm's knowledge must be imputed to him and, upon "switching sides," he was disqualified. *Id.* at 386. Attorney Silverman must likewise be disqualified in this action.

Canon 9 provides that "a lawyer should avoid even the appearance of professional impropriety." For Canon 9 to apply, "there need be no proof of actual wrongdoing," but there must be a "reasonable possibility" of some "specifically identifiable impropriety." *Woods v. Covington County Bank,* 537 F.2d 804, 813 (5th Cir.1976). *See also Williams v. Trans World Airlines, Inc.,* 588 F.Supp. 1037, 1041 (W.D. Mo.1984).[3] Thus, whether Silverman did in

**2.** Both *Fred Weber* and *Dean Foods* have been overruled on other grounds. *In re Multi Piece Rim Products Liability,* 612 F.2d 377, 378 (8th Cir.1980). *See also Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981).

**3.** To determine whether a Canon 9 violation has occurred, the Fifth Circuit has developed a two-fold test. First, there must be a "reasonable possibility that some specifically identifiable im-

propriety did in fact occur" and second, there must be a "likelihood of public suspicion" which outweighs the interests served by a lawyer's continued participation in a case. *Woods v. Covington County Bank,* 537 F.2d at 813. There is some confusion as to whether the Eighth Circuit has adopted this test. Indeed, in *Fred Weber, Inc. v. Shell Oil Co.,* 566 F.2d at 609, the Eighth Circuit quoted from *Woods v. Covington County Bank,* the first-part of this test. However, the court failed to apply the Fifth Circuit

fact receive confidential information is irrelevant under Canon 9 and in fact, the policy against disclosure of confidences precludes that inquiry. *State of Arkansas v. Dean Foods Products Co., Inc.*, 605 F.2d at 386. *See also Fred Weber, Inc. v. Shell Oil Co., Inc.*, 566 F.2d at 609.

In this action, the ultimate question under Canon 9 should be stated as follows: Would a member of the public or bar see an impropriety in the representation of defendant against plaintiff by a lawyer whose former firm received confidences and represented plaintiff in a related matter, by a lawyer who had access to plaintiff's otherwise confidential files during a period of time in which he actually represented defendant in this action, and by a lawyer whose new firm, only upon his active participation in the case, became intensely interested in issues and affirmative defenses related to plaintiff's prior actions. The court finds that with respect to each of these facts, there is a grave "likelihood of public suspicion"—a reasonable person would see an impropriety in the representation of defendant by Rosen & Silverman.

While the confidences imputed to one attorney will not automatically be imputed to the attorneys in his or her new firm, it is to be expected that "a lawyer having earlier received confidential information, could at least inadvertently direct his staff to proceed along lines dictated or influenced by that information." *State of Arkansas v. Dean Foods Products Co., Inc.*, 605 F.2d at 387. Even though an attorney may have no actual knowledge of his firm's client's file, when he becomes associated with a firm opposing that client, an appearance of impropriety may arise and his subsequent associates may be disqualified as well. *Id.* at 387. To protect against the appearance of impropriety and to insure that these confidences are *not* revealed, the new firm

can build a "Chinese Wall" between the attorney who has "switched sides" and all further matters dealing at all with litigation of that client. *EZ Paintr Corp. v. Padco, Inc.*, 746 F.2d at 1462.

In this case, Rosen did not build a "Chinese Wall" and Silverman was not "screened off" when he joined the new firm. Rather, he immediately began his active participation in this case. Rosen and Silverman freely discussed defense of this action. Thus, continued representation by that firm violates the spirit of Canon 9.

█ Because no "Chinese Wall" was erected, and because the facts in this action give rise to the reasonable possibility of specifically identifiable improprieties, a reasonable person would see an impropriety in the continued participation of the law firm Rosen & Silverman. Such continued participation in this action by that firm violates Canon 9's proscription against actions which give rise to the "appearance of impropriety."

The public's interest in maintaining the "fairness and integrity of the judicial process" and the plaintiff's interest in "a trial free from the risk that confidential information has been unfairly used against it" in this case outweigh defendant's interest in being represented by the Rosen & Silverman law firm. *Williams v. Trans World Airlines, Inc.*, 588 F.Supp. at 1046. As stated by the Eighth Circuit, an attorney's "conduct must be such as to breed at least the confidence normally reposed in the parish priest." *State of Arkansas v. Dean Foods Products Co., Inc.*, 605 F.2d at 386. To insure that defendant is not prejudiced by disqualification of its attorneys, however, the court will allow Rosen & Silverman to turn over to substitute counsel all work product developed or discovered prior to May 7, 1985, the date when Silverman's name first appeared on pleadings associat-

---

test in its analysis of the case. In a more recent Eighth Circuit case, *State of Arkansas v. Dean Foods Products Co., Inc.*, 605 F.2d at 386–87, the court neither mentioned the Fifth Circuit test nor adopted it in its analysis of Canon 9. While, under the facts of this case, this court could find a Canon 9 violation under the Fifth

Circuit two-part test as stated above, it would be inappropriate to do so. Specifically, the first-part of the test is unduly rigid. To require that plaintiff show by even a reasonable possibility standard that a specifically identifiable impropriety "did in fact occur" undermines the role of Canon 9 in preserving the public trust.

522

ed with this action. All defense motions filed after May 7, 1985, will be considered withdrawn, as well as defendant's response to plaintiff's July 31, 1985 motion to compel answers to interrogatories. This matter must be handled by substitute counsel. Accordingly, it is

ORDERED that plaintiff's motion to disqualify the firm of Rosen & Silverman in this action is granted. It is further

ORDERED that all defense motions now pending in this action are withdrawn. It is further

ORDERED that defendant procure substitute counsel in this matter on or before August 30, 1985. It is further

ORDERED that substitute counsel enter his appearance in this action on or before September 6, 1985.