954 F.Supp. 187 (1996)
Clarence E. GILMORE, Plaintiff,
v.
GOEDECKE CO., Defendant.
No. 4:95CV2472 CDP.
United States District Court, E.D. Missouri, Eastern Division.
May 10, 1996.
*188 Lois Spritzer, Van Amburg and Chackes, St. Louis, MO, for Clarence E. Gilmore.
Mark W. Weisman, Rebecca E. Walsh, Gallop and Johnson, St. Louis, MO, G. Carroll Stribling, Jr., Mary W. Murphy, Ziercher and Hocker, Clayton, MO, for Goedecke Co.

MEMORANDUM AND ORDER
PERRY, District Judge.
This matter is before the Court on plaintiff's motion to disqualify the law firm of Ziercher & Hocker, P.C., from representing defendant Goedecke Company. For the reasons that follow, plaintiff's motion to disqualify will be granted.
Plaintiff Clarence Gilmore filed this age discrimination action on December 21, 1995, against Goedecke Co., plaintiff's employer from February 1993 to February 1994. Attorneys G. Carroll Stribling, Jr. and Mary W. Murphy of the law firm of Ziercher & Hocker entered their appearance on behalf of defendant on March 14, 1996. Ziercher & Hocker apparently has represented defendant in various matters for approximately fifty years. Ziercher & Hocker also entered its appearance on behalf of Goedecke Co. in the EEOC proceedings in July 1994 which preceded this action. Beginning in March 1992, plaintiff had retained Gary Vincent, a partner at Ziercher & Hocker, to perform various legal services for him. specifically, Vincent handled three separate matters: (1) satisfaction of a judgment lien; (2) preparation of a durable power of attorney for Mabel Dillinger naming plaintiff as her attorney; and (3) representation concerning a landlord/tenant matter. The final matter, the landlord/tenant dispute, was concluded during January 1994; plaintiff was billed by Ziercher & Hocker for that matter on February 1, 1994.
In March or April 1994, following his February termination by defendant, plaintiff contacted Vincent regarding the termination. Plaintiff and Vincent have different versions of this telephone conversation. Plaintiff testified *189 by affidavit that, during the 20-25 minute conversation, he described the circumstances regarding his hiring, the terms of his employment, his termination, conversations he had with specific Goedecke management personnel, and facts that plaintiff felt supported his age claim, and he asked for Vincent's legal assessment. Plaintiff stated that Vincent told him he would need to file an EEOC charge and that it sounded like a good case, but qualified that by stating he was not an employment lawyer. Plaintiff stated that Vincent then told him he might have a conflict of interest, and that if litigation occurred, the firm would represent Goedecke. Plaintiff stated that Vincent then told him to seek another attorney to handle the matter, and gave plaintiff the names of three employment lawyers.
Vincent testified by affidavit that plaintiff called and told Vincent that he thought he had an age discrimination claim against Goedecke. According to Vincent, he then told plaintiff that Ziercher & Hocker represented Goedecke and suggested that plaintiff contact another attorney. Vincent stated that he did not give plaintiff any advice, nor would he have because he does not handle employment law matters. Vincent and plaintiff have not spoken since that conversation.
Plaintiff contends that the firm of Ziercher & Hocker should be disqualified based on the fact that plaintiff was an ongoing client of the firm when this lawsuit was brought, and based on the extensive conversation regarding this lawsuit held by plaintiff and Vincent. Defendant contends that plaintiff was not an ongoing client of the firm; rather, the firm merely handled three discrete matters for plaintiff that were completed before plaintiff was even terminated. In addition, defendant contends that Vincent stopped his conversation with plaintiff before any confidential information was obtained, and therefore Ziercher & Hocker should not be disqualified.
There is some confusion as to which rules of ethics apply in this district. Local Rule 12.02 of the United States District Court for the Eastern District of Missouri adopts the "Code of Professional Responsibility adopted by the Supreme Court of Missouri." See E.D. Mo. L.R. 12.02. However, the Supreme Court of Missouri adopted the Rules of Professional Conduct ("Model Rules") effective January 1, 1986. See Mo. Sup.Ct. R. 4. Because the intent of the local rules was to adopt the law of Missouri, the Court will apply the Model Rules. In their briefs, the parties addressed the Code of Professional Responsibility ("Model Code") provision stating that "a lawyer should avoid even the appearance of impropriety." See Model Code of Professional Responsibility Canon 9. This is also one of the provisions relied on by the Eighth Circuit in the two cases primarily addressed by the parties, Arkansas v. Dean Foods Products Co., Inc., 605 F.2d 380 (8th Cir.1979) and Fred Weber, Inc. v. Shell Oil Co., 566 F.2d 602 (8th Cir. 1977), cert. denied, 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403 (1978). As the Eighth Circuit has recently recognized, however, those two Model Code cases are of limited use in jurisdictions that have adopted the Model Rules. Harker v. Commissioner of Internal Revenue, 82 F.3d 806, 808-09 (8th Cir.1996).
Although the parties' briefs focus on the nature of the representation provided by Vincent to plaintiff before this lawsuit, the Court finds that the dispositive event is the telephone conversation between Vincent and plaintiff regarding plaintiff's prospective age discrimination case.[1] The Court is aware that the parties disagree as to the content of that telephone conversation. There are no factors that tend to make either person's *190 version of the conversation more or less believable. However, without making a specific credibility determination, the Court finds that it is appropriate to accept plaintiff's version of the telephone conversation as true for purposes of this motion. The prejudice to plaintiff if plaintiff's version is true and Ziercher & Hocker is allowed to continue as counsel for Goedecke Co. outweighs any prejudice suffered by defendant resulting from an order to obtain new legal counsel at this early stage of the proceedings in this case.
Even having accepted plaintiff's testimony regarding his conversation with Vincent about his termination, and even assuming that plaintiff was not at that time a client of the firm but merely a prospective client, the issue is not easily resolved. The Court finds guidance in an American Bar Association Formal Ethics Opinion that addresses a similar situation. See ABA Formal Op. 90-358 (Sept. 30, 1990) (protection of information imparted by prospective client). The Committee first concluded that Model Rule 1.6 applies "to protect information imparted by a would-be client seeking to engage the lawyer's services even though no legal services are performed and the representation is declined." Id. The Committee then addressed whether the confidentiality limitations imposed by Rule 1.6 "may be so severe as to require the lawyer to withdraw from the representation [of an existing client]," in this case Goedecke, under Model Rule 1.7(b). Model Rule 1.7(b) states:
(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; (2) the client consents after consultation. ...
The Committee concluded as follows:
Even if the lawyer reasonably believes that the representation of the existing client would not be adversely affected by a material limitation, ... revelation of sufficient information for the existing client to appreciate the significance of the limitation on the representation ordinarily would require the lawyer to divulge information relating to the would-be client's representation. Since such a revelation can be made under Rule 1.6 only after consulting with the would-be client ... the lawyer in the typical case cannot practicably obtain the requisite consents to continue representing the existing client.
Id. The Court agrees with the analysis of the ABA Ethics Committee. In this case, it is clear that plaintiff does not consent to revelation of any confidential information received by Vincent during his representation of plaintiff or during the age discrimination telephone conversation.[2] Without this consent, Ziercher & Hocker cannot relay to Goedecke, its existing client, the nature of any information the firm has regarding plaintiff. Accordingly, Goedecke cannot make an informed decision as to whether to consent to representation in this situation. Therefore, plaintiff's motion to disqualify the law firm of Ziercher & Hocker from representing defendant Goedecke Co. in this action will be granted.
Accordingly,
IT IS HEREBY ORDERED that plaintiff's motion to disqualify the law firm of Ziercher & Hocker, P.C., from representing defendant Goedecke Company [# 8] is granted.
IT IS FURTHER ORDERED that defendant shall obtain substitute counsel no later than June 17, 1996, and that after new counsel have entered, the attorneys of record from Ziercher & Hocker shall withdraw.
IT IS FURTHER ORDERED that the Case Management Order previously entered in this case is vacated, and new defense counsel and plaintiff's counsel shall, no later than July 1, 1996, propose any appropriate amendments to the Case Management Order. If the Court receives no such proposal by *191 that date, the Court will reinstitute the current Case Management Order.
NOTES
[1] The Court notes that defendant's attempts to minimize the relationship between plaintiff and Vincent are not particularly impressive in at least two respects. First, defendant claims that actual representation of plaintiff ended in 1992 and that Vincent thereafter only represented individuals associated with plaintiff. However, in a January 17, 1994 letter to the opposing individual in the landlord/tenant matter, Vincent stated that "this firm has been retained by Ms. Betty Hackmann and Mr. Bud Gilmore [plaintiff]." Second, defendant characterizes the firm's relationship with Goedecke as ongoing without any reference to actual pending matters, yet characterizes the firm's relationship with plaintiff as having terminated the minute Vincent stopped billing, even though Vincent had dealt with plaintiff on numerous occasions over the course of three years.
[2] Because the Model Rule governing imputed disqualification applies, Vincent's representation of and conversations with plaintiff are imputed to the firm of Ziercher & Hocker. See Model Rule 1.10.