**EZ PAINTR CORPORATION, Appellee,**

v.

**PADCO, INC., Appellant.**

**Appeal No. 84–773.**

United States Court of Appeals,
Federal Circuit.

Oct. 29, 1984.

Bennett, Circuit Judge, filed an opinion dissenting in part.

Allen I. Sacks, Minneapolis, Minn., argued for appellant.

Lawrence J. Field, Minneapolis, Minn., of counsel.

Robert J. Schneider, Chicago, Ill., argued for appellee.

Walter M. Jones, Chicago, Ill., of counsel.

Before MARKEY, Chief Judge, and DAVIS and BENNETT, Circuit Judges.

DAVIS, Circuit Judge.

In this patent infringement suit in the United States District Court for the District of Minnesota the court disqualified appellant Padco's law firm because two newly-joined members of that firm had immediately prior to that joinder been partners in a law firm representing appellee EZ Paintr Corporation in this very litigation. The court also limited the turn-over of work product by the disqualified firm to its successor to that part of the product prepared before the attorneys changed firms. We affirm.

I

The underlying action, begun in February 1981, was brought in the District Court by appellee EZ Paintr Corporation (EZ Paintr) for infringement by appellant Padco, Inc. (Padco) of EZ Paintr's patent for an extension handle; Padco counterclaimed that EZ Paintr infringed Padco's patent relating to textured paint rollers. From the beginning of the case EZ Paintr was represented by Robert J. Schneider and others (of Chicago) as well as by Everett J. Schroeder and his firm (the Schroeder firm), of Minneapolis.[1] Padco was represented by the Kinney firm of Minneapolis. Effective April 1, 1983, while this action was pending (and had not yet been tried), two members of the Schroeder firm left that firm and joined the Kinney firm. Those two were Messrs. Silvertson and Steffey. The latter orally told the Schroeder firm on March 3, 1983 of his decision and Silvertson did so about March 21, 1983.

On May 31, 1983 EZ Paintr asked the Kinney firm to disqualify itself from representing Padco in this case. After the Kinney firm declined, EZ Paintr filed on June 3, 1983, a motion for disqualification of the

---

**1.** Mr. Schneider has been lead counsel and the Schroeder firm has acted as local counsel in Minnesota.

Kinney firm. The matter was referred to a Magistrate who received affidavits and briefs, and then recommended that the motion be granted. Padco sought review by the District Court and filed further affidavits. The District Judge made a *de novo* determination under 28 U.S.C. § 636(e)(1), and granted the motion to disqualify. She also forbade the Kinney firm from handing over to successor counsel any work product produced after April 1, 1983. This appeal is taken from those decisions.[2]

## II

■ The precise rule on disqualification applied in the Eighth Circuit (the circuit in which this District Court lies) is not clear[3] but we are satisfied that that Circuit would not be less solicitous of client confidentiality than the general weight of authority which is that—where a substantial relationship is found to exist between two adverse matters (and sides) in which the challenged attorney or his firm has participated and will participate—there is a presumption (in the situation of a private lawyer's "changing sides") that confidential disclosures passed to the challenged lawyer, but that presumption is rebuttable. *See, e.g., Schiessle v. Stephens,* 717 F.2d 417, 418, 420 (7th Cir.1983); *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 518 F.2d 751, 754 (2d Cir.1975).

## III

■ No one disputes, or could challenge, the fact that there is a substantial relationship between the prior and present representation of Silvertson and Steffey. This is one continuous case, and those attorneys were first members of a law firm (the Schroeder firm) representing EZ Paintr in this case, and later became members of the partnership (the Kinney firm) representing the opposite party, Padco, in the very same litigation. Of course, if the presumption that client confidences passed to them while at the Schroeder firm is irrebuttable, that would plainly be ground for disqualification in the circumstances here. If the presumption is not irrebuttable but rebuttable, the District Court could properly find on this record, as it did, that the presumption had *not* been rebutted.

First, Schneider's affidavit shows that, during the pendency of this litigation (before Schroeder partners Steffey and Silvertson joined the Kinney firm), he discussed in detail with his co-counsel, Everett Schroeder (senior partner of Steffey's and Silvertson's prior firm), many aspects of this case, conveying confidential information of EZ Paintr to Schroeder. Second, Schneider's affidavit declares that he twice discussed the merits of EZ Paintr's case with Silvertson personally. "In the first of these meetings, I discussed the subject matter of the Defendant's [Padco's] patent in suit, our theory of invalidity with respect to EZ Paintr Corporation's claim of infringement of its patent, relative sales volumes between Defendant's and Plaintiff's sales of accused infringing products," all of which comprised confidential information of EZ Paintr. At the second meeting—when Silvertson attended the hearing on EZ Paintr's motion for summary judgment—Schneider explained that company's theory of invalidity and the basis for the motion. Third, the Schroeder firm was small, with seven lawyers while Steffey and Silvertson were there; Schroeder's affidavit declared that it was the common and established practice for the members of that firm to discuss, within the office, and particularly at lunch, the facts and merits of the various legal matters being handled by them individually; the firm members ate lunch together regularly, on an average of at least 3–4 days each week.

2. The other relevant facts will be considered in the course of our discussion.

3. *See State of Arkansas v. Dean Foods Products Co., Inc.,* 605 F.2d 380, 384–86 (8th Cir.1979), (applying an irrebuttable presumption that client confidences have been disclosed to the attorney in the prior litigation or the prior aspect of the litigation (if it is the same case), at least if he was and is now a partner), overruled on the issue of appellate jurisdiction by *In re Multi-Piece Rim Products Liability,* 612 F.2d 377 (8th Cir.1980).

Fourth, Schroeder's affidavit specifically states that "the facts relevant to, and the merits of" this patent case "were discussed at various times by [Schroeder] with and in the presence of each of" Steffey and Silvertson.

What is there on the other side of the argument? It is clear that neither Steffey nor Silvertson were assigned, while at the Schroeder firm, to work on this litigation (aside from Silvertson's introducing Schneider in the District Court). Steffey's affidavit states that he has no recollection of having received any confidential information from or about EZ Paintr. He also says that (to the best of his knowledge) the Schroeder firm performed only ministerial tasks in connection with the litigation, and when he informed that firm that he was leaving to join the Kinney firm there was no significant or substantial mention of the Padco matter as likely to or possibly causing a conflict of interests. Silvertson's affidavits are to the same effect; he denies having discussed with Schneider the substance of this litigation and cites the Schroeder firm's billings to support his lack of participation.

The District Court concluded, on the basis of all the affidavits and the circumstances, that appellant had not "clearly and effectively" rebutted the presumption that Steffey and Silvertson "have knowledge of confidences of EZ Paintr."[4] On the record we have just summarized, we must conclude that District Judge Murphy's findings are not clearly erroneous and her conclusion not an abuse of her discretion. We are not free to say that the specific statements of Messrs. Schroeder and Schneider, together with the proven facts, must be overridden by the lack of recollection of Messrs. Steffey and Silvertson.

One possible way of dealing with the presumption is fully to "screen off" the attorney changing sides as soon as he joins the new firm. This is often called building a "Chinese Wall" between him and all further matters dealing at all with the litigation. *See Sierra Vista Hospital, Inc. v. United States*, 639 F.2d 749, 226 Ct.Cl. 223 (1981); *Kesselhaut v. United States*, 555 F.2d 791, 214 Ct.Cl. 124 (1977). Here, it was not until after the Magistrate issued his first report and recommendation (July 13, 1983) that appellant even suggested that it might erect such a "Chinese Wall." This was more than three months after Steffey and Silvertson had joined the Kinney firm, and of course after appellee had made its disqualification motion. Judge Murphy held that this offer of a "Chinese Wall" was too late. We agree it was permissible for her to hold that the screening arrangement must be set up "when the potentially disqualifying event occurred" and the new firm knows (or must have been aware) of the problem—in this case that date was when the two attorneys first joined the Kinney firm on April 1, 1983— and cannot fault the District Court for following that principle. *See LaSalle National Bank v. County of Lake*, 703 F.2d 252, 259 (7th Cir.1983).

### IV

Padco argues that, nevertheless, EZ Paintr waited too long to move for disqualification and by its delay waived any rights to assert impropriety in the Kinney firm's continued representation of appellant. The bare facts have already been sketched. Steffey told the Schroeder firm of his planned switch on March 3, 1983, and Silvertson on March 21, 1983. The change-over occurred on April 1, 1983. On May 31, 1983 appellee asked the Kinney firm to disqualify itself. The motion to disqualify was filed on June 3, 1983. Appellant says that the "delay," without any prior indication that there was a problem, lulled the Kinney firm into continuing its representa-

---

**4.** The general rule of those courts permitting proof to overcome the presumption that confidences had been acquired is that such evidence "must 'clearly and effectively' demonstrate that the attorney in question had no knowledge of the information, confidences and/or secrets related by the client in the prior representation." *Schiessle v. Stephens*, 717 F.2d at 420.

tion of Padco and into the belief that appellee saw no conflict of interest.[5]

▮ Mere delay or laches is not normally a defense to disqualification. *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, 574 (2d Cir.1973) (3 yr. delay). Certainly the time-lapse here—two months—was quite short, and there is no indication (as in *Redd v. Shell Oil Co.*, 518 F.2d 311 (10th Cir.1975)) that the motion was interposed for an improper objective such as to put off a trial date. Neither of appellee's attorneys (the Schroeder firm or Schneider) ever made any affirmative statement to the Kinney firm suggesting that there was no conflict problem (on which statement, perhaps, an argument for waiver or estoppel might have rested). The Kinney firm simply made its own inferences from silence. Moreover, as the District Court pointed out, the Kinney firm had its own obligation, on the advent of Steffey and Silvertson, to protect appellee's confidences, and could not merely go its own way until its opponent made some move.

### V

▮ After the District Court had issued its order disqualifying the Kinney firm, appellant sought an order permitting that firm to turn over its work product to successor counsel. The District Court granted that request with respect to work product prepared prior to April 1, 1983 (the date Steffey and Silvertson joined the Kinney firm), but denied it as to subsequent work product. Appellant asks us to reverse the latter portion of the order and to authorize all work product to be turned over.

In its previous decision the District Court had determined, and we have just upheld that ruling (Parts III and IV, *supra*), that appellant has not rebutted the presumption that EZ Paintr's confidences and secrets had been received by the two lawyers while with the Schroeder firm, and also that those confidences and secrets very well may have been passed on (perhaps inadvertently) to the Kinney firm after April 1st.[6] On that basis, it was not clearly erroneous or an abuse of discretion for the court to hold that "there is a significant danger that work product prepared after April 1, 1983 contains confidences" and also that "it cannot be concluded that there is no reasonable possibility that the work product produced by the Kinney firm contains confidential information." Those conclusions lead, of course, to prohibition of the turn-over of all work product prepared after April 1st.[7]

Appellants would have us reject that result because, we are told again, the Kinney firm was lulled into continuing its preparations by EZ Paintr's failure to raise the issue of disqualification for two months. The same answer we have given to that complaint in Part IV, *supra*, applies here. The Kinney firm was not lulled (in the sense of being induced by others into a "false sense of security and wellbeing")

---

**5.** A member of the Kinney firm talked to Schneider prior to April 1, 1983, about the two attorneys' change, but was not told that there would be a problem involving this litigation. Schneider's affidavit states that (a) he was not told that the attorneys would be Kinney partners, (b) he "was not asked if I objected to this change of position of the attorneys involved or if I believed my client would object to the change." and (c) it was not until May 16th that he learned that the attorneys had joined the Kinney firm as partners.

**6.** Though the members of the Kinney firm swore (in an affidavit) that they had not received such material from the two lawyers, Judge Murphy could properly refuse to accept that subjective assurance as sufficient. For one thing, lawyers are not always aware of their receipt or use of confidential information.

*Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, 565, 571 (7th Cir.1973). As the District Court said, "objective and verifiable evidence" (such as, for instance, a "Chinese Wall") is called for. That does not exist in this case.

**7.** *First Wisconsin Mortgage Trust v. First Wisconsin Corp.*, 584 F.2d 201 (7th Cir.1978), in which turn-over of all work product was ordered, differs sharply from the current case because in that case "[t]here is no challenge to defendants' assertion that the preparation of the loan file summaries [the work product involved] was not aided by any confidential information acquired by the Foley lawyers through their prior relationship with Trust. Indeed, it appears that the summaries are no different than they would have been if made in their entirety by lawyers who were strangers to all of the parties." 584 F.2d at 204.

but continued purely on its own, though it should have known better. The lapse of time, on the other hand, was not unreasonable on EZ Paintr's part. Another factor (mentioned by the District Court) supporting the acceptabilty of the trial court's judgment is that most of the work product was produced prior to April 1st and can be turned over; the prohibited post-April 1 part was characterized by appellant's present counsel as "not very much" (about two-ninths of the whole work product).

### VI

In the end the crux of this case is that the Kinney firm did not do what it should have done—either postpone the coming of Steffey and Silvertson until the underlying litigation was finished, or place those attorneys behind a "Chinese Wall" (within the Kinney firm) as soon as it was decided that they would come there.

The orders of the District Court are affirmed.

AFFIRMED.

BENNETT, Circuit Judge, dissenting in part.

I concur in the court's able opinion except for Part II wherein it is stated: "The precise rule on disqualification applied in the Eighth Circuit (the circuit in which this District Court lies) is not clear ...."

As the majority opinion indicates, *In re Multi-Piece Rim Products Liability Litigation v. Risjord*, 612 F.2d 377 (8th Cir. 1980) (en banc), unanimously overruled *Arkansas v. Dean Foods Products Co.*, 605 F.2d 380 (8th Cir.1979), an earlier Eighth Circuit decision which held there was an irrebuttable presumption when counsel switched sides that client confidences had impermissibly been disclosed. Not mentioned, but also overruled explicitly by name, was *Fred Weber, Inc. v. Shell Oil Co.*, 566 F.2d 602 (8th Cir.1977), which also approved such an irrebuttable presumption. The opinion in *Multi-Piece Rim Products* states, in relevant part:

> We have reconsidered *Weber* and *Dean Foods* ...; it is the opinion of this court that *Weber* and *Dean Foods* should be and hereby are overruled. [612 F.2d at 378.]

In so holding, the Eighth Circuit necessarily decided that the aforesaid presumption was indeed rebuttable. While appellate jurisdiction was the main issue in *Multi-Piece Rim Products*, nevertheless *Arkansas v. Dean Foods Products* and *Fred Weber, Inc. v. Shell Oil* were overruled in toto, without qualification or reservation.

To me, the position of the Eighth Circuit is thus clear. I think we should take that court at its word and not raise unnecessary doubts as to whether it meant what it said in its en banc opinion.