**In the Matter of DAVENPORT COMMUNICATIONS LIMITED PARTNERSHIP, Debtor.**

**Bankruptcy No. 89–1250–D.**

United States Bankruptcy Court, S.D. Iowa.

Jan. 11, 1990.

Richard A. Davidson, Davenport, Iowa, for debtor.

Richard F. Stageman, Des Moines, Iowa, for Unsecured Creditors Committee.

John Waters, Des Moines, Iowa, for U.S. Trustee.

---

ORDER—APPLICATION OF UNSECURED CREDITORS COMMITTEE FOR ORDER APPROVING ITS EMPLOYMENT OF ATTORNEYS AND GRANTING CERTAIN OTHER RELATED RELIEF

RUSSELL J. HILL, Bankruptcy Judge.

On November 9, 1989, a hearing was held on the Application of the Unsecured Creditors Committee for an order approving its employment of attorneys and granting certain other related relief. The following attorneys appeared on behalf of their respective clients: Richard A. Davidson for

Davenport Communications Limited Partnership and Richard F. Stageman for Unsecured Creditors Committee. At the conclusion of said hearing, the Court took the matter under advisement upon a briefing deadline. Briefs were timely filed and the Court considers the matter fully submitted.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The Court, upon review of the pleadings, arguments of counsel and briefs submitted, now enters its findings and conclusions pursuant to F.R. Bankr.P. 7052.

## FINDINGS OF FACT

1. On June 6, 1989, Davenport Communications Limited Partnership filed a voluntary Chapter 11 petition.

2. On October 5, 1989, the Unsecured Creditors Committee filed an application for an order approving its employment of attorneys and granting certain other related relief (hereinafter "Application for Employment of Attorneys"). The Application for Employment of Attorneys sought the Court's approval of the employment of Davis, Hockenberg, Wein, Brown, Kohn, and Shors (hereinafter "the Davis Firm") as counsel for the Unsecured Creditors Committee and certain other related relief.

3. On October 5, 1989, a notice of bar date for objections to the Application for Employment of Attorneys was filed. The notice provided that resistances to the application must be filed within fifteen days of October 6, 1989.

4. On October 12, 1989, Davenport Communications Limited Partnership filed an objection to the Application for Employment of Attorneys. Davenport Communications Limited Partnership objected to the application on the basis that the Davis firm is located in Des Moines, Iowa, which "is approximately 175 miles west of Davenport, Iowa." Davenport Communications Limited Partnership argued that the time required for the Davis firm's attorneys to travel to Davenport and return to Des Moines would impose a financial burden upon the Davenport Communications Limited Partnership estate.

5. On October 30, 1989, the Unsecured Creditors Committee filed an amendment to the Application for Employment of Attorneys, withdrawing Exhibit A annexed thereto, and substituting an annexed Exhibit A, which altered certain statements in the original Exhibit A.

6. On November 3, 1989, Davenport Communications Limited Partnership filed a supplemental objection to employment of Creditors Committee attorneys or, alternatively, a motion to disqualify the Davis firm. In this supplemental objection, Davenport Communications Limited Partnership, raised objections other than the travel time objection.

7. The Davis firm represented Davenport Communications Limited Partnership in the matter of the Davenport Communications Limited Partnership's organization. Specifically, the Davis firm advised a group of investors (which included Lee Hanna) who wished to obtain UHF TV licenses. The investors were organized as a limited partnership, Davenport Communications Limited Partnership. The Davis Firm prepared the limited partnership agreement and various amendments to the limited partnership agreement. The Davenport Broadcasting Company is the general partner of Davenport Communications Limited Partnership. Davenport Broadcasting Company also was organized by the Davis Firm. A license was granted to Davenport Communications Limited Partnership, entitling it to operate KLJB–TV in Davenport, Iowa.

8. Acting as general counsel for Davenport Communications Limited Partnership, the Davis firm was in a position to advise Davenport Communications Limited Partnership and Davenport Broadcasting Company as to the validity of the organization of the entities and the adequacy of their capitalization.

9. The Davis Firm continued to act as general counsel for Davenport Communications Limited Partnership until 1987.

10. Virtually all of the physical assets used by Davenport Communications Limited Partnership, including all the broadcasting equipment, is owned by Davenport In-

vestment Partnership. The assets owned by Davenport Investment Partnership were leased to Davenport Communications Limited Partnership under the terms of a long-term leasing agreement entered shortly before the station went on the air on July 28, 1985. The Davis Firm represented Davenport Communications Limited Partnership during the time that the lease was negotiated.

11. In late 1986, an internal controversy arose concerning control of the TV station license. As a result of this internal controversy, the Davis Firm's representation of Davenport Communications Limited Partnership was terminated. The Davis Firm represented certain interests, including Lee Hanna, involved in the control dispute.

12. At the conclusion of the Davis firm's representation of Davenport Communications Limited Partnership and Mr. Hanna, a fee dispute arose and the Davis firm filed a lawsuit to collect fees from Davenport Communications Limited Partnership. The case was settled out of court prior to trial.

13. The Application for Employment of Attorneys provides in part on pages 2 and 3: "The Creditors Committee must be represented by counsel in the [Davenport Communications Limited Partnership] Chapter 11 case who have not only bankruptcy expertise, but also expertise in numerous other practice specialties (including, but not limited to, corporate and securities law, tax law, finance and commercial law, and the evaluation and conduct of corporate and commercial litigation) ... As evidenced by the attached verified statement, [the Davis Firm bankruptcy attorneys responsible for representing the Unsecured Creditors Committee (hereinafter "USCC attorneys")] have in association with other members of the Davis law firm, the accessibility, experience, expertise, and resources which enable the Davis law firm to provide the multi-faceted legal services needed by the Creditor's Committee in this case."

14. The Davis firm has not enacted any specific institutional mechanisms to insulate the USCC attorneys from any flow of confidential information from members of the Davis firm employed while the Davis firm represented Davenport Communications Limited Partnership.

15. Representing the Unsecured Creditors Committee, the Davis Firm sent a letter to counsel for Davenport Communications Limited Partnership dated October 19, 1989. In this letter, the Davis Firm stated a number of concerns about the Davenport Communications Limited Partnership plan of reorganization including: 1) "What was the initial capitalization of the Debtor?" 2) "Is the lease of equipment to the Davenport Investment Company an unperfected lease—purchase agreement subject to avoidance?" 3) "Should there be an equitable subordination of the unsecured claims of limited partners?"

## ANALYSIS

I. October 12, 1989 Travel Time Objection

■ On October 12, 1989, Davenport Communications Limited Partnership filed an objection to the Application for Employment of Attorneys. Davenport Communications Limited Partnership objected to the location of the Davis Firm in Des Moines, Iowa, asserting that the time required for the Davis Firm's attorneys to travel to Davenport and return to Des Moines would impose a financial burden upon the Debtor's estate. The Court finds that any financial burden imposed upon the Davenport Communications Limited Partnership estate due to excess travel time, is outweighed by the client's right to counsel of choice.

II. November 3, 1989 Supplemental Objection to Application for Employment of Attorneys, or, Alternatively, Motion to Disqualify the Davis Firm

   A. Timeliness of November 3, 1989 Objection

■ Initially, the Unsecured Creditors Committee asserts that the Supplemental Objection was not timely filed. The Unsecured Creditors Committee filed a notice and bar date for objections to the Application for Approval of Employment of Attorneys providing that resistances to the Ap-

plication must be filed within fifteen days of October 6, 1989. Davenport Communications Limited Partnership filed an objection on October 12, 1989, within the bar date for resistances. Therefore, although the supplemental objection was filed November 3, 1989, after the bar date provided for resistances, Davenport Communications Limited Partnership filed a timely resistance and the November 3, 1989 supplement thereto shall be considered by the Court.

B. November 3, 1989 Supplemental Objection

The American Bar Association Code of Professional Responsibility provides a basis for attorney disqualification. *See State of Arkansas v. Dean Foods Products Company, Inc.*, 605 F.2d 380 (8th Cir.1979); *Fred Weber, Inc. v. Shell Oil Co.*, 566 F.2d 602 (8th Cir.1977), cert. den. 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403 (1978).[1] The Iowa Code of Professional Responsibility, adopted by the Iowa Supreme Court, has incorporated virtually all the provisions of the ABA Code. Canon 4 and Canon 9 of the ABA Code are incorporated into the Iowa Code of Professional Responsibility.

■ Canon 4 provides:

A lawyer should preserve the confidences and secrets of a client.

To give substance to this, courts have long held that confidential disclosures, actual or presumed, necessitate disqualification of an attorney when he represents an adverse interest in a substantially related matter. *Dean Foods*, 605 F.2d at 384–85. The existence of an attorney-client relationship raises an irrefutable presumption that confidences were disclosed during the course of that relationship. *Dean Foods*, 605 F.2d at 384. A law firm's representation of an adverse party in a related matter warrants disqualification. *Dean Foods*, 605 F.2d at 385.

Canon 9 provides:

A lawyer should avoid even the appearance of professional impropriety.

The Eighth Circuit established that Canon 4, admonishing the lawyer to preserve the confidences and secrets of his clients, is inextricably wedded to Canon 9. *Dean Foods*, 605 F.2d at 385. Thus, the question to be answered by this Court is whether a member of the public or of the bar would see an "impropriety" in the representation of the Unsecured Creditors Committee by the Davis Firm, who previously acted as the Davenport Communications Limited Partnership's general counsel. *See Dean Foods*, at 605 F.2d at 385; *Fred Weber*, 566 F.2d at 609.

■ Confidences imputed to an attorney are presumed shared among his partners and employees associated with him at that time. *Dean Foods*, 605 F.2d at 385; *Fred Weber*, 566 F.2d at 608. Therefore, the liability for disqualification extends to the attorney's partners and employees, including employee lawyers. *Dean Foods*, 605 F.2d at 385.

■ Applying the above standards to the case *sub judice*, the Davis Firm should be disqualified from representing the Unsecured Creditors Committee. A substantial relationship exists between the Davis Firm's prior representation of Davenport Communications Limited Partnership and the issues present in this bankruptcy case. This substantial relationship is evidenced by the October 19, 1989 letter from the Davis Firm to counsel for the Davenport Communications Limited Partnership. In this letter the Davis Firm stated a number of concerns about the Davenport Communications Limited Partnership plan of reorganization. One concern was whether the lease of equipment to the Davenport Investment Company is an unperfected lease-purchase agreement subject to avoidance. The letter also expressed concerns about the initial capitalization of the Debtor and whether there should be an equitable subordination of the unsecured claim of limited partners. Undercapitalization is often alleged as grounds for equitable subordina-

1. Both *Dean Foods* and *Fred Weber* were overruled on grounds unrelated to attorney disqualification by *In re Multi–Piece Rim Products Liability*, 612 F.2d 377 (8th Cir.1980). *EZ Paintr Corp. v. Padco, Inc.*, 746 F.2d 1459, 1461 (1984); *Hallmark Cards, Inc. v. Hallmark Dodge, Inc.*, 616 F.Supp. 516, 520 (D.Mo.1985).

tion of insider loans to a debtor. *See Collier on Bankruptcy,* 15th ed. ¶ 510.05[3][4]. The Davis Firm represented Davenport Communications Limited partnership in the matter of its organization, and acted as general counsel for Davenport Communications until 1987. The Davis Firm was thus in a position to advise Davenport Communications Limited Partnership as to the validity of its organization and the adequacy of its capitalization. Further, the Davis Firm represented Davenport Communication Limited Partnership during the time that the lease with Davenport Investment Partnership was negotiated. It is therefore evident that a substantial relationship exists between the Davis Firm's prior representation of Davenport Communications Limited Partnership and the issues present in this bankruptcy case.

It is also evident that a member of the public or the Bar would see an impropriety in the representation of the Unsecured Creditors Committee by the Davis Firm. It is logical for the public to expect that because the Davis Firm represented Davenport Communications Limited Partnership as its general counsel from its organization until 1987, that the Davis Firm would not represent the Unsecured Creditors Committee during a Chapter 11 case. The October 19, 1989 letter shows the potential conflicts between the Unsecured Creditors Committee and the Davenport Communications Limited Partnership. A reasonable person would see an impropriety in the Davis Firm's representation of the Unsecured Creditors Committee when these potential conflicts exist.

According to *Dean Foods,* disqualification extends to all Davis Firm attorneys. However, the Unsecured Creditors Committee asserts that the USCC attorneys were not with the Davis Firm at the time of the Davis Firm's representation of Davenport Communications Limited Partnership and therefore no knowledge, confidences or secrets have been passed to or are likely to be passed to the USCC attorneys. The Unsecured Creditors Committee therefore suggests enacting a specific institutional mechanism, a "Chinese wall," to insulate the USCC atorneys from any flow of confidential information.

Typically, a law firm erects a Chinese wall to screen off a new attorney who previously worked at a law firm which now represents an adverse party in a contested matter. *EZ Paintr Corp. v. Padco, Inc.,* 746 F.2d 1459 (Fed.Civ.1984). To prevent the flow of confidential information from this new attorney to other members of his new law firm, the firm erects a Chinese wall, screening off the "infected" attorney from all matters in the current litigation. An effective Chinese wall is erected when the potentially disqualifying event occurs, and the new firm knows (or must have been aware) of the problem. *EZ Paintr,* 746 F.2d at 1459; *Hallmark Cards, Inc.,* 616 F.Supp. at 521 (W.D.Mo.1985); *In re Chicago South Shore and South Bend Railroad,* 101 B.R. 10, 14–15 (Bankr.N.D. Ill.1989).

In the case *sub judice,* the Chinese wall suggested by the Davis Firm would not be effective. The Davis Firm is effectively arguing for a reverse Chinese wall. This is not a circumstance where a single attorney has changed law firms. Rather, this is a circumstance where an entire law firm has changed sides. The only mitigating factor is that the USCC attorneys were not employed by the Davis Firm during its previous representation of Davenport Communications Limited Partnership. However, as stated above, every member of the Davis Firm employed during the Davis Firm's representation of the Davenport Communications Limited Partnership is infected. Therefore, in order for a Chinese wall to be effective, every infected attorney would have to be screened off from the USCC attorneys. This is a nearly impossible task, and, by the Unsecured Creditors Committee's own admission, is not in the best interest of the Unsecured Creditors Committee because "the Creditors Committee must be represented by counsel who have not only bankruptcy expertise, but also expertise in numerous other practice specialties." Further, the Davis Firm has not enacted a Chinese wall. Therefore, it is too late to do so at this point.

## ORDER

IT IS ACCORDINGLY ORDERED that the application of official Unsecured Creditors Committee for an order approving its employment of the Davis Law Firm and granting certain other relief is denied.