**COBB PUBLISHING, INC., and Joseph T. Cobb, Plaintiffs,**

v.

**HEARST CORPORATION, and Dow Jones & Co., Defendants.**

No. 93–CV–71771–DT.

United States District Court, E.D. Michigan, Southern Division.

June 16, 1995.

Mark Cantor, Ernie L. Brooks, Brooks & Kushman, Southfield, MI, for plaintiffs.

Marjory G. Basile, Gregory L. Curtner, Michael Fayz, Miller Canfield, Detroit, MI, for defendants.

## ORDER DENYING DEFENDANTS MOTION FOR RECONSIDERATION

BORMAN, District Judge.

*Background*

Defendants Hearst and Dow Jones have moved, by their attorneys, Miller, Canfield, Paddock & Stone (hereinafter MC) for Reconsideration of this Court's Order of Disqualification of MC dated January 31, 1995 (hereinafter "January 31, 1995 Order").[1] That Order applied the Local Rule of the Federal District Court for the Eastern District of Michigan 111.1(d), which adopted the Michigan Rules of Professional Conduct, (hereinafter MRPC), in particular MRPC 1.10(b). MC's Motion for Reconsideration does not challenge the application of MRPC 1.10(b) which states:

Rule 1.10 Imputed Disqualification: General Rule.

.   .   .   .   .

(b) When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same ... matter in which that lawyer, or a firm with which the lawyer was associated, is disqualified under Rule 1.9(b) unless:

(1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and,

(2) written notice is promptly given to the appropriate tribunal to enable it to ascertain compliance with the provisions of this rule.

The January 31, 1995 Opinion and Order provided two independent grounds for MC's disqualification. First, the Court concluded that MC had violated MRPC 1.10(b)(1), in failing to timely implement a comprehensive screening procedure. MC did not implement the comprehensive firm-wide screen until August 26, 1994, a date subsequent to MC's hiring (August 8, 1994) and employment (August 15) of Steven Cohen, Esq., who, while employed at Plaintiff Cobb's Law Firm, Brooks & Kushman (hereinafter BK), had worked extensively on Plaintiff's case.[2]

Second, the Court concluded that MC had violated MRPC 1.10(b)(2), in failing to provide the required prompt written notice of Cohen's hiring to Chief U.S. District Judge Julian Abele Cook, Jr., to whom this case was originally assigned, to enable him to ascertain compliance with the provisions of this rule. Thus, for a period of two weeks after Cohen had been working at MC, encompassing a date when Judge Cook held a hearing on the instant case (August 16, 1994), the Court was unaware of Cohen's change of employment, and therefore unable to carry out its function of ascertaining whether MRPC 1.10(b), had been complied with by MC.

Accordingly, this Court found that MC had not properly complied with either MRPC 1.10(b)(1) and (b)(2). Plaintiff's Motion for Reconsideration does not challenge the separate second ground upon which the January 31, 1995 Order was based—MC's failure to provide the prompt notice to this Court required under MRPC 1.10(b)(2). The January 31, 1995 Order not only delineated MC's failure to comply with (b)(2), but further discussed MC's misleading notice to this Court, erroneously implying on August 31, 1994 both that it had just hired Mr. Cohen, and that it had timely erected a Chinese wall throughout the firm—two significant facts, critical to the Court's required determination under Rule 1.10(b)(2) of whether MC had properly carried out its notice-to-Court obli-

---

1. Defendant's Motion for Reconsideration was timely filed on March 14, 1995, per this Court's granting Defendants' Motion to Extend the filing deadline.

2. The January 31, 1995 Order noted that "Cohen spent the greatest amount of time on the case,

approximately 300 hours, and had an extensive amount of contact with Plaintiff Cobb" (Op. at P. 2), and further noted that "Mr. Cohen's significant involvement at BK on the Cobb case ... has never been disputed by MC." (Op. at P. 2, n. 1).

gation. In fact, MC did not provide any notice to Judge Cook at the time of Mr. Cohen's hiring, (August 8, 1995), at the time he began employment (August 15, 1994), nor did MC provide the required notice to the Court at a hearing on the instant case on August 16, 1994.

MC's Petition for Reconsideration challenges the first ground set forth in the Court's January 31, 1995 Order—that MC failed to follow MRPC 1.10(b)(1), which requires disqualification of the firm unless "the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom." The January 31, 1995 Order, cited to *Manning v. Waring, et. al.,* 849 F.2d 222 (6th Cir.1988), and State Bar of Michigan Standing Committee on Professional and Judicial Ethics Opinion R–4, September 22, 1989, in concluding that MC did not timely and effectively implement a screening procedure, and further that as to this issue as well, the aforementioned MC submissions to the Court on August 31, 1994 were misleading at best as to the critical facts dealing with what steps were taken by MC to deal with the conflict created by Cohen's hire, and when these actions occurred.

*Discussion*

The following facts are relevant to this discussion of Petitioner's Motion for Reconsideration:

1. Steven Cohen, the BK attorney hired away by MC, had worked extensively on Plaintiff Cobb's case.

2. MC was informed by Cohen of the conflict during the first week of July, 1994, more than a month before Cohen joined the firm.

3. MC did not implement a firm-wide Chinese Wall until August 26, 1994, and did not notify this Court of Cohen's hire until August 31, 1994.

In *Manning v. Waring, supra,* the Court of Appeals remanded to the District Court for a hearing on the issue of disqualification. The two principal Seventh Circuit decisions discussed in *Manning—LaSalle Nat'l Bank v. County of Lake,* 703 F.2d 252 (7th Cir. 1983), and *Schiessle v. Stephens,* 717 F.2d

417 (7th Cir.1983)—both upheld attorney disqualification.

*Manning* overturned the District Court's holding that mandated *per se* disqualification when an infected attorney transfers from a firm representing one side of a case to the firm on the other side. The District Court had held that " 'Chinese wall' screening devices cannot rebut the presumption of shared confidences when the confidences were obtained by the 'quarantined' lawyer from the former client while representing him in the same proceedings in which other members of the firm are now representing an opposing party." *Manning, supra* at 224. The Sixth Circuit held:

> We conclude that the district court erred in holding that screening devices can never be effective to protect confidences under the circumstances presented above.

*Id.* at 224.

This Court's January 31, 1995 Order did not hold that MC was *per se* disqualified merely because it had hired Steven Cohen who had worked on the instant case while employed at BK. This Court, as required under *Manning,* examined the relevant factors involved in the instant case before rendering its Order of Disqualification:

1. the requirements under Local Court Rule, 111.1(d), incorporating MRPC 1.10(b).

2. whether MC was aware of the conflict problem early-on and failed to conform to MRPC 1.10(b). As to MRPC 1.10(b)(1), the January 31, 1995 Order concluded that MC was specifically made aware of the problem by Cohen during the first week of July, 1994, and ignored it until after Plaintiff filed a Motion for Disqualification on August 22, 1994. Only then, did MC move to comply with MRPC 1.10(b)(1) by sending its August 26, 1994 Chinese Wall Notice to all MC employees.

3. whether MC properly honored its MRPC 1.10(b)(2) responsibility to the Court by its letter to the Court on August 31, 1995. The January 31, 1995 Order concluded that MC's filing on August 31, 1995 was not timely, and further, misleading by implying, if not indeed stating that MC had just then employed Cohen, and

had erected a Chinese Wall immediately upon his hire.

While the Court's January 31, 1995 Order did not specifically deal with the issue of harm and prejudice to Defendants' Hearst and Dow Jones from the Order of Disqualification, the Court notes that these factors are present in any case of disqualification, and recognizes their presence in this case. Indeed, this factor is one of the prerequisites set forth in *Manning v. Waring*, that must be demonstrated by MC in order to require the District Court to make a determination whether the presumption of shared confidences has been broken:

> Where, as here, it is demonstrated that disqualification will work a hardship, it is clear that the quarantined lawyer was privy to confidential information received from the former client now seeking disqualification of the lawyer's present firm, and there is a substantial relationship between the subject matter of the prior and present representations, then the District Court must determine whether the presumption of shared confidences has been rebutted.

*Id.* at 225.

Hardship in the instant case will be tempered by the fact that the Court will permit MC to turn over to its successor law firm all Hearst/Dow Jones work product prepared prior to August 8, 1995, the day that Cohen was hired by MC. *See EZ Paintr Corp. v. Padco, Inc.*, 746 F.2d 1459, 1460 (Fed.Cir. 1984). In the instant case, as in *EZ Paintr*, at 1464, almost all of the work product was produced prior to Cohen's hiring on August 8, 1994. This significantly reduces the amount of hardship to Hearst and Dow Jones because the substantive proceedings of this case have been on "hold" since Plaintiff's Motion for Disqualification was filed on August 22, 1994.

Defendants' Motion for Reconsideration asserts that because there was no evidence presented to the Court that Cohen had disclosed any confidences to MC attorneys, there is no ground for disqualification, i.e.,

"No Harm, No Foul." This claim is not supported by *Manning*, where the Sixth Circuit remanded for further proceedings. *Manning* did not allege that the moving "infected" attorney, Hatzenbuehler, had disclosed confidences and secrets:

> Although the bank alleged that Hatzenbuehler was privy to its confidences and secrets as a result of his representation, it did not suggest that he had disclosed them. *Id.* at 224.

Thus, the Sixth Circuit was faced with the same situation as here—a change of firms and no claim of a breach of confidences and secrets. Defendants' argument, that *Manning* requires this Court to reject disqualification because of no claim that Cohen had disclosed confidences and secrets, only has merit if the Sixth Circuit had held as to that claim, that the counsel must be reinstated, and that the Motion of Disqualification should be dismissed. Instead, the Sixth Circuit ordered that the case be remanded for further proceedings to determine "whether *Waring, Cox* can rebut the presumption of shared confidences." *Manning*, 849 F.2d at 227.[3]

In addition, the *Manning* opinion, noted these critical facts concerning their "infected" attorney's move:

> ... As soon as Hatzenbuehler [the infected attorney] joined Heiskell, Donelson, efforts were undertaken to prevent disclosure of confidential information. *Id.* at 224.

No such efforts were undertaken in the instant case when Cohen joined MC.

In *Manning*, the Sixth Circuit also noted that

> Hatzenbuehler was "screened" from Heiskell, Donelson's efforts on behalf of Waring, Cox even before the bank asserted a claim against Waring Cox, since Heiskell, Donelson was sensitive to the potential for future conflict between the two.

*Id.* at 224.

In contrast, in the instant case, there was no Chinese Wall or firm-wide screening of Co-

---

**3.** A separate second basis for the Sixth Circuit's order of remand in *Manning*, was whether the attorney, Hatzenbuehler, had a separate conflict due to his representation of the Fort Deposit Bank in a state action. That issue is not relevant to this discussion.

hen before Plaintiff filed its Motion for Disqualification filed on August 22, 1994. Thus, in contrast to *Manning*, there is no evidence that MC was sensitive to the potential for conflict.

*Manning* set up a two-stage determination by the district judge in ascertaining whether the hiring firm can rebut the presumption of shared confidences:

> 1. Whether the "infected" hired attorney has shared his client's confidences with others at the hiring firm
>
> 2. If confidences have not been disclosed, then there must be proof that the hired attorney and the hiring firm, "in a timely fashion, implemented screening procedures which will be effective in preventing any disclosures of these confidences".

*Manning* at 227.

As to the first determination, this Court's Opinion and Order March 31, 1995, concluded that there was no evidence presented to this Court that Cohen had shared Cobb's BK's confidences with others at MC. At the same time, this Court also found the following three facts indicating the significant potential for violating Cobb's confidences, which underscore the importance of the hiring firm timely fulfilling the requirements of MRPC 1.10(b):

> 1. MC hiree attorney Steven Cohen took home part of his BK file on the instant case,
>
> 2. Cohen brought that file to MC's offices on October 27, 1994, the day of the Court's hearing on the instant case,
>
> 3. MC admitted that Cohen could have accessed its computer file on the instant case, which conceivably could have allowed him to input confidential BK information into the MC file,

As to fact number 2, this Court notes that *Manning* speaks of both the hiree (Hatzenbuehler/Cohen) and the firm (Heiskell, Donelson/MC), in setting forth that both must demonstrate timely, effective, screens:

> Waring, Cox must demonstrate that Hatzenbuehler and Heiskell, Donelson, in a timely fashion, implemented screening procedures which will be effective in preventing any disclosure of these confidences.

*Id.* at 227. In the instant case, although Cohen, at the initiation of his contact with MC during the first week of July, 1994, alerted Keitha Vanderkloot, MC's recruiting coordinator, of the conflict situation, Cohen had possession of a portion of Cobb's BK file through October 27, 1994, more than two months after he began working at MC.

As to fact number 3, MC's Brief in support of its Motion for Reconsideration, in Footnote 4, and the accompanying text, provided this response to the Court's concern (Opinion, P. 15) relating to MC's lack of security in its computer system:

> Concern about Miller, Canfield's computer system is wholly misplaced. *It would be a legitimate concern only where the migrating attorney took a matter with him, the file contents of which would have to be screened from attorneys at the new firm.* (emphasis added).

MC's Brief N. 4 on Page 14. Yet, this is precisely what occurred in the instant case. Evidence at this Court's hearing of October 27, 1994, established that Cohen had taken with him from BK certain papers/notes relating to his representation of Plaintiff Cobb, possessed them at the October 27, 1994 hearing, and may well continue to have possession of them. Further, MC conceded that its computers could be accessed by anyone at MC.

Accordingly, Cohen had access to MC's computer, which in a worst-case hypothetical scenario—not in any sense proven in this case—could have allowed him to input Cobb confidences into the MC computer, which would assist MC in its defense of this case. This potential provides additional support for the need for proper and prompt compliance with MRPC 1.10(b), and why Curtner's "don't talk to Cohen" order to Fayz and Basile after the August 16th hearing was not sufficient.

MC argues in its Motion for Reconsideration that under *Manning*, that this Court's inquiry

> "must proceed in two parts: (1) a retrospective factual determination of whether confidences were disclosed, and if not, (2) a prospective assessment of whether screen-

ing mechanisms are in place to safeguard against future disclosures." (Defendant's Brief, P. 11)

In essence, MC contends that, whenever a Motion for Disqualification is brought, if the hiring firm can establish that there is no evidence of any confidences disclosed up to that time, and can point to a screen or Chinese Wall for the future, the inquiry must be resolved against disqualification. Carrying this argument to its logical extreme, if no motion for disqualification is filed until 6 months, or indeed "whenever" after the "infected" attorney joins the new firm, and the new firm did not establish a comprehensive screen and even ignored notice of the conflict, and that new firm presents evidence through its attorneys that no confidences were shown to have been disclosed, and further evidences that a comprehensive firm-wall screen is now being established for the future, then the Court must deny disqualification. This is not the holding in *Manning*.

MC's interpretation of the Manning retrospective/prospective guideline is not correct because there would then be no need for the key word "timely" in that sentence:

> If the Court concludes that confidences have not been disclosed, then, pursuing the inquiry suggested by the Seventh Circuit, Waring, Cox must demonstrate that Hatzenbuehler and Heiskell, Donelson, in a *timely* fashion, implemented screening procedures which will be effective in preventing any disclosures of these confidences.

*Id.* at 227 (emphasis added).

MC's interpretation of *Manning* ignores the key word "timely", which is comparable to the key word "promptly" which appears in the MRPC 1.10(b)(2) requirement of prompt notice to the Court, because both the courts and the bar have concluded that time is of the essence for the "infected" firm to establish the necessary protective devices to permit it to qualify for the exception from per se disqualification.

It is understandable why a legal system, which is willing to rely on the good faith statements of "righteousness" by the adversary lawyers, who have just been involved in

terminating the complainant's primary lawyer-client relationship, should demand more effective protective procedures than "nothing happened" affidavits. This is why the legal profession requires timely screens/walls to protect client confidences. The words "timely" in *Manning*, and "promptly" in MRPC 1.10(b)(2) are not mere surplusage, but essential to the procedure involved. Requiring "timely" screens and "prompt" notice provides the greatest potential for protecting the confidences of the spurned client, and indicates to that client and to the public that the legal profession is responsive to the confidences of the clients that it serves.

*Manning* pays heed to "the law's traditional concern for the sanctity of client confidences". *Id.* at 227. Those confidences are not given proper concern and protection under MC's interpretation of *Manning* in its Motion for Reconsideration. Further, the *Manning* case did not involve a Rule of Professional Responsibility comparable to that which had been adopted by the Federal District Court for the Eastern District of Michigan, in the instant case. In the instant case, there were significant requirements that MC was required to follow under MRPC 1.10(b), that it failed to follow.

As to the first provision, 1.10(b)(1), *Manning*, a case arising from another state, did not take into account the requirements imposed upon MC and upon this Court by that particular provision, or its interpretation in Michigan Ethics Opinion R–4.

Further, under MC's interpretation, there is no meaningful role for the judiciary, because all of the controlling factors are placed in the hands of the "infected" attorney and the firm that hired away that counsel from the aggrieved adversary. In essence, MC's scenario places the burden on Plaintiff Cobb, the former client of the attorney in whom he had confided, to establish a breach of confidentiality, by testifying about those confidences and how they might have been breached. Yet, it is these particular confidences, and in general a client's right to have his confidences to his counsel protected that brought about MRPC 1.10(b) and the other relevant rules of professional responsibility. This burden shifting to the detriment of the

client is precisely what the Rule is meant to avoid. It was not Plaintiff Cobb who has changed the dynamics of these proceedings, but MC, who hired away Cobb's primary attorney and confidant in these proceedings, who was aware of the conflict at the time of the hire, and who then, failed to follow the Michigan Rules of Professional Responsibility. Indeed, MC recognized the preeminent relevance and applicability of MRPC 1.10 to the instant case in its letter to Chief Judge Cook on August 31, 1994, which MC styled as follows:

> RE: Compliance with MRPC 1.10: *Cobb Publishing Inc., et al. v. Hearst, et al.* 891 F.Supp. 388 (E.D.Mich.1995).

Further, this letter from MC's hiring principal Thomas G. Parachini provided the following acknowledgments to MRPC 1.10 as the controlling authority:

> I am writing to you as Miller, Canfield's Hiring Principle [sic] to inform the Court, pursuant to Michigan Rules of Professional Conduct 1.10 (MRPC 1.10). . . .

> Because of Mr. Cohen's previous involvement in the litigation, and pursuant to MRPC 1.10, adopted by the United States District Court for the Eastern District of Michigan. . . .

> The requirements and limitations of MRPC 1.10 reiterated in the accompanying Notice are and have been observed both before and after the date of Mr. Cohen's affiliation with the Firm.

Accordingly, the relevant requirements for MC to meet were those contained in MRPC 1.10(1) & (2), and this Court has found that MC has failed to comply with both provisions of that Rule. Nothing contained in MC's Motion for Reconsideration supports a different conclusion by this Court—disqualification of MC is the appropriate ruling in this case.

While MC's Motion for Reconsideration relies in significant part on the Federal Circuit's decision in *Panduit Corp. v. All States Plastic Manufacturing,* 744 F.2d 1564 (Fed. Cir.1984), this Court notes that *Panduit* is neither relied upon nor even cited in the Sixth Circuit decision in *Manning.*

*Similarly,* as to *Novo Terapeutisk Laboratorium, etc. v. Baxter Travenol Lab.,* 607 F.2d 186 (7th Cir.1979) (en banc), also cited in Defendant's brief, this case is not even cited in the *Manning* discussion of what the Sixth Circuit finds to be the relevant Seventh Circuit decisions—two decisions subsequent to *Novo: Schiessle v. Stephens, supra,* and *LaSalle National Bank v. County of Lake, supra.*

MC argues that this Court has created a rule of automatic disqualification, and that this Court has ignored the issue of harm suffered. But, this Court's ruling of January 31, 1995, does not create a rule of automatic disqualification for every case in which the facts establish what MC describes as "a perceived breach of the rules." (Brief P. 15). This case does not involve merely a "perceived breach of the rules" or "a harmless defect" (Brief P. 15). This case involves:

1. MC's refusal to follow the rules after having been notified time and again of this conflict of interest situation prior to Cohen's joining the firm

   (a) first by Cohen in the first week of July, 1994 when he informed its recruiting coordinator Keitha Vanderkloot of the conflict in his first conversation with her,

   (b) second, when he told MC Attorney Basile on August 12 that he couldn't speak with her about a BK vs MC case because he was joining MC the following Monday.

2. MC's refusal to follow the Rule as to notifying the Court promptly

3. MC's attempt to mislead Chief Judge Julian A. Cook, Jr. in its tardy filings with the Court on August 31, 1994, by

   (a) stating, erroneously in its August 31st letter to Judge Cook that the Notice: Chinese Wall dated August 26th had "confirmed oral instructions given immediately upon learning of Mr. Cohen's employment". In fact, no such oral instructions had been given to the firm as MC's Curtner testified to.

   (b) stating in the attached "Notice: Chinese Wall" of August 26, 1994 that "recently, attorney Steven G. Cohen joined the firm" but conveniently omitting the

date he began employment at MC thereby preventing Judge Cook from ascertaining whether Cohen's hire was indeed recent, a prerequisite fact for him to utilize in determining whether MC had met the requirement that it notify the Court timely under MRPC 1.10(b).

(c) stating in the August 26, 1994 "Notice" that "This Notice will confirm the prior instructions given regarding these matters," implying that comprehensive prior instructions had been given to the entire firm, when in fact there were none save the aforementioned Curtner order to attorneys Fayz and Basile.

Finally, this Court notes the decision in *EZ Paintr v. Padco Inc.*, 746 F.2d 1459 (Fed.Cir.1984),[4] upholding the District Judge's disqualification of the transferee law firm. In that case, the firm to which the "infected" attorneys transferred suggested it might erect a Chinese Wall more than three months after the attorney's had joined the firm, and "of course after appellee had made its disqualification motion". *Id.* at 1462. The Court of Appeals for the Federal Circuit stated:

> Judge Murphy held that this offer of a "Chinese Wall" was too late. We agree it was permissible for her to hold that the screening arrangement must be set up "when the potentially disqualifying event occurred" and the new firm knows (or must have been aware) of the problem—in this case that date was when the two attorneys first joined the Kinney firm on April 1, 1983—and cannot fault the District Court for following that principle. See, *LaSalle National Bank v. County of Lake*, 703 F.2d 252, 259 (7th Cir.1983).

*Id.* at 1462.

In the instant case, as in *EZ Paintr*, which cited to *LaSalle* as did the Sixth Circuit in *Manning*, MC's erection of the Chinese Wall, and its notice to the federal district court were both after MC knew of the problem and after the potentially disqualifying event occurred. MC was put on notice by Cohen in early July of the conflict—and did nothing. MC was put on notice, again on August 16,

1994, when it could have walked back into Judge Cook's courtroom and placed this information on the record to permit the Judge to carry out his function under MRPC 1.10(b)(2), but it did not do so. MC did nothing until after Plaintiff filed a Motion for Disqualification, and then filed pleadings that were misleading, at best, as to critical information.

The Federal Circuit concluded in *EZ Paintr*:

> In the end, the crux of this case is that the Kinney firm did not do what it should have done—either postpone the coming of Steffey and Silverston until the underlying litigation was finished, or place those attorneys behind a "Chinese Wall" (within the Kinney firm) as soon as it was decided that they would come there.

*Id.* at 1464.

In the instant case, MC did not do what it should have done during the first week of July, 1994, when Cohen told them of the conflict. Further, MC, again and again did not do what it should have done to comply with MRPC 1.10(b); on August 8, 1994, when Cohen accepted its offer of hire, on August 15, 1994 when Cohen began work at MC, or on August 16, at the hearing before Judge Cook. Finally, with regard to MC's communication to this Court on August 31, 1994, MC did not act timely or appropriately.

Accordingly, Defendant's Motion for Reconsideration of the Opinion and Order of Disqualification is denied.

Let Judgment be Entered Accordingly.

---

4. The Federal Circuit decided *EZ Paintr* on October 29, 1984, subsequent to its decision in *Pan-duit Corp. v. All States Plastic Manufacturing*, 744 F.2d 1564 (Fed.Cir.1984) (September 28, 1984).